365 So.2d 901 (1978)
Dr. Wilson COUCH
v.
FRICHTER'S SPORTSMEN'S HAVEN, INC.
No. 9594.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
Rehearings Denied January 16, 1979.
Writ Refused February 23, 1979.
*902 Val A. Schaff, III, Schaff & Currier, New Orleans, for Dr. Wilson Couch, plaintiff-appellee.
Peter A. Feringa, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for Ford Motor Co., third party defendant-appellee.
Robert J. Prejeant, Watkins, Watkins & Walker, Houma, for M & L Industries, Inc., third party defendant-appellee.
G. Frederick Seemann, Opelousas, for Frichter's Sportsmen's Haven, Inc., defendant-appellant.
Before STOULIG, BOUTALL and BEER, JJ.
BOUTALL, Judge.
This is a case involving a claim for reduction of the purchase price of a sale of a fishing boat.
Briefly stated, the facts are these: Dr. Wilson Couch, appellee in this action, purchased a 26 foot Sport Fisherman's boat from the appellant, Frichter's Sportsmen's Haven, Inc., in July of 1974. The exact date of this sale is a contested issue in this case. This same boat was purchased by Frichter's from Bluefin Sabre Corp. which was originally named as a third party in this suit, but is no longer in business and was never served. During the first months of service the boat had some engine problems which were remedied by M & L Marine Industries of Houma, Louisiana, under warranty obligations of the Ford Motor Company. Both M & L and Ford were named as third party defendants and are appellees before this court.
The problem at issue developed when Dr. Couch and several companions were on a fishing trip in the boat in June of 1976. On the return trip, the starboard engine developed some trouble evidenced by the emission of steam from the engine. Dr. Couch requested repairs from M & L Industries, but after inspection was informed that the engine block was not manufactured for marine use, but rather was intended for automotive use. Any warranty would only cover automotive use. He was then advised that Ford would not pay for the repairs nor would any repairs done be warranted for marine use. Dr. Couch then authorized installation of a new engine and instituted this action.
After trial on the merits, the trial judge found in favor of Dr. Couch and against Frichter's in the amount of $2,200 and dismissed the third party actions, which had been brought against M & L and Ford. Frichter's appeals from this judgment, both as to Dr. Couch and, alternatively as to the third party actions. Dr. Couch answers the appeal praying for an increase in the award to cover all of his expenses, including the cost of the new engine.
Appellant, Frichter's, first alleges that the claim of Dr. Couch is barred by prescription under Civil Code Article 2534. This Article reads as follows:
"The redhibitory action must be instituted within a year, at the farthest, commencing from the date of the sale."
*903 Appellant contends that the sale took place on July 10, 1974, the day on which the purchaser signed a document alleged to be the bill of sale. Appellee claims, in the other hand, that this was merely a work order, that he left a $1,000 deposit on this date, and that the sale and transfer of title actually occurred on July 17, 1974. Suit was filed on July 16, 1975.
Our examination of the record discloses that one of the exhibits introduced by appellee, labelled by the trial court Plaintiff's exhibit No. 4, is entitled "Manufacturer's statement of origin to a boat or motor." This document shows the transfer by Bluefin to Frichter's dated February 1, 1974. The first assignment (from Frichter's to Dr. Couch) is listed as having taken place on July 17, 1974 and is signed by James Frichter and notarized on the same date. We therefore conclude that the sale took place on July 17th and that the overruling of the exception of prescription by the trial judge was correct.
Appellant next contends that the engine was fit for the purposes intended and was therefore not subject to an action to reduce the purchase price. The trial judge found that the evidence established the fact that the engine was manufactured for automotive use and that, therefore, Dr. Couch was entitled to a reduction in the purchase price. We agree. He stated that Frichter's was liable for the transfer of engines which were not manufactured to be marine engines regardless of their lack of knowledge as to the difference. We agree.
An action for redhibition or reduction lies notwithstanding the good faith of the seller where the thing sold lacks a quality which it was represented to have, if this quality was a principal motive for making the contract. See Aiken v. Moran Motor Company, 165 So.2d 662 (La.App. 1st Cir. 1964) and Civil Code Article 2529 and 2544.) The marine nature of an engine intended to be one of a matched pair which is purchased to be used in a fishing boat is certainly a principal motive for making the purchase.
Appellees prayer for the reimbursement of all expenses including the new motor, however, must be rejected. The trial judge found that the malfunction occurring in June of 1975 was caused by plaintiff's negligence rather than any defect in manufacture. A review of the testimony reveals that this conclusion is amply supported by the evidence. The malfunction was apparently caused by a broken belt on the engine. Dr. Couch restarted the engine after the initial breakdown and again attempted to use it for propulsion. The testimony is to the effect that this negligence caused whatever damage there was in the engine. There is, on the other hand, no evidence to link the mistake in the engine's intended use to this malfunction.
The proper measure of damages in an action to reduce the sale price of an object has been phrased as the difference between the sale price and the price a reasonable buyer and seller would have agreed upon had they known of the defect. Menville v. Stephens Chevrolet, 300 So.2d 858 (La.App. 4th Cir. 1974); Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir. 1975). We feel that this test applied to this case would be most accurately reflected by the amount necessary to give Dr. Couch an installed marine, rather than an installed non-marine engine. In this case Dr. Couch is entitled to damages equal to the amount necessary for rebuilding the automotive engine into a marine engine, rather than a marinized or converted engine, plus expenses of installation.
The only testimony in the record on this point indicates that this could have been done for between $1,500 and $2,500. The expenses for installation, as shown in some of the evidence introduced by plaintiff, come to approximately $500. We cannot, therefore, find that the figure of $2,200 awarded by the trial judge is manifestly erroneous. The trial judge must be given great discretion in matters of this type. See Canter v. Koehring, 283 So.2d 716 (La.) (1973) and Civil Code Article 1934(3).
The trial court found that only Bluefin Sabre Corp. could have been called in warranty, and since it was not cited, that no *904 third party actions were available to Frichter's. The evidence shows Ford was in no way responsible for the adaptation and installation of this engine for marine purposes. M & L's position in this case is solely that of a repairer for Ford's warranty obligations. We agree with the trial judge's dismissal of the third party actions against M & L and Ford.
For all of the above reasons, the judgment appealed is affirmed. Costs of this appeal to be borne by the appellant Frichter's.
AFFIRMED.
BEER, J., concurs in part and dissents in part.
BEER, Judge, concurring in part and dissenting in part.
I agree with the majority's opinion in all respects except for that portion of the opinion which affirms a $2,200 diminution in the purchase price.
I agree with my brothers that Dr. Couch would be entitled to the amount necessary to make the engine a "marine engine" comparable in all respects to the other engine that it was originally identified with as one of a pair. However, the burden of proving this differential has not been carried by plaintiff in a manner sufficient to provoke a calculable award. Accordingly, I respectfully dissent from that portion of the majority opinion which affirms the $2,200 award to Dr. Couch.