413 So.2d 577 (1982)
Harold LEONARD
v.
DAIGLE PONTIAC-BUICK-GMC, INC., et al.
No. 14629.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
*578 Larry P. Boudreaux, Thibodaux, for plaintiff, appellant and appellee.
Pegram J. Mire, Jr., Gonzales, for defendant, appellant and appellee.
Henry D. Salassi, Jr., Baton Rouge, for third party.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
Plaintiff, Harold Leonard, filed this redhibitory action, seeking to rescind the sale of a 1978 Pontiac 2-door Grand Prix automobile or, alternatively, to obtain a reduction in the sale price. Made defendants were Daigle Pontiac-Buick-GMC, Inc. (Daigle), the dealer from whom plaintiff bought the automobile, and General Motors Corporation (GMC), the manufacturer of the vehicle. Daigle answered, denying liability and reconvening for a credit for plaintiff's use of the automobile. Daigle also third partied GMC, seeking indemnification for any liability imposed upon it. GMC answered plaintiff's petition and Daigle's third party demand, denying the existence of a defect attributable to design or manufacture of the unit, and, alternatively, asserting that the defect was easily correctable.
Trial was held on July 15, 1980. At the close of trial, the court took the case under advisement. Subsequently, the court rendered judgment in favor of plaintiff and against Daigle, reducing the purchase price *579 of the automobile $1,500.00 and awarding plaintiff $500.00 in attorney's fees. The court also dismissed plaintiff's suit and Daigle's third party demand against GMC. From the judgment of the trial court, Daigle and plaintiff each perfected devolutive appeals to this court. We affirm.
This suit arises from plaintiff's purchase of an allegedly defective automobile from Daigle. Plaintiff bought the vehicle on February 28, 1978, for a cash price of $9,881.72. Plaintiff traded in a 1973 Buick Century automobile, for which he was given a credit of $1,500.00, with the balance of $8,381.72 being financed.
Approximately three weeks after the purchase, plaintiff was driving the car when it began to rain. At that time, plaintiff noticed a leak in the T-top of his car. Plaintiff testified that he then brought his car to Daigle to be repaired. During the next several months, plaintiff brought the car to Daigle on numerous occasions for repair of the T-top. When Daigle failed to fix it to his satisfaction, he brought the instant suit.
Plaintiff described the water leak to be a "dripping." The water would leak in the front part of the passenger section of the automobile. Plaintiff testified that the leak was still present at the time of trial. There was also testimony which indicated that the T-top also had air leaks, which caused a noise.
On several occasions when plaintiff brought the car in for repair, he was required to leave it overnight. Plaintiff testified that, on one occasion, he had to leave the car with Daigle for about two weeks.
Roger Laurent, Daigle's general manager, who was also in charge of the service department, testified that plaintiff brought the car in for repair of the T-top on four or five occasions. He stated that the top was not defective. He testified that on these occasions, Daigle applied a special adhesive and changed the rubber gaskets, in accordance with the manufacturer's repair bulletins, in an attempt to repair the leaks. Laurent testified that on each occasion that Daigle worked on the car, he considered the car to have been fixed when it was turned over to Leonard. He indicated that the leaks were easily reparable.
Frank Camperlingo, a dealer service consultant for GMC who qualified as an expert in automobile mechanics and, more specifically, T-tops, testified that, in March, 1979, Daigle requested that he come to the dealership and lend his expertise in the repair of plaintiff's automobile. Camperlingo testified that he could detect nothing wrong with the T-top, except that the weatherstrips had been overtightened. He stated that the top did not leak when subjected to a water test. He expressed the opinion that replacement of the weatherstrips would correct the problem. He further testified that there was nothing defective in the design or manufacture of the T-top and that the repairs were of a simple nature. Camperlingo suggested that the defects in the T-top was caused by Daigle's adjustments.
On appeal, Daigle raises two issues, to-wit: (1) was Daigle's third party demand against GMC properly dismissed; and (2) was the $1,500.00 reduction in the sale price excessive? Plaintiff questions the remedy of reduction of price rather than rescission and the adequacy of the reduction amount.
In dismissing the main and third party demands against GMC, the trial court made the following finding in its reasons for judgment:
"The leaks complained of, as testified to by Daigle's General Manager, were not attributable to the manufacture or design of the car but were such that could have been corrected by the dealer."
On appeal, Daigle contends that the above finding of the trial court does not justify the dismissal of its demand against GMC. It asserts that whether or not the defect was in the "manufacture or design" of the vehicle is immaterial to a determination of the manufacturer's liability, citing Rey v. Cuccia, 298 So.2d 840 (La.1974), which, inter alia, embodies the general rule that a manufacturer is presumed to know of any defects in its product. Daigle also relies on LSA-C.C. art. 2531, which reads in pertinent part:

*580 "In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, ...."
The jurisprudence of this state recognizes two defenses in redhibitory actions wherein the seller of a new automobile seeks indemnity from the manufacturer. First, the manufacturer may defeat the dealer's recovery if it proves that the redhibitory defects did not exist at the time the automobile was acquired by the dealer, or were not attributable to the manufacturer. Bagwell v. Coleman Oldsmobile, Inc., 391 So.2d 1260 (La.App. 1 Cir. 1980); Daigle v. Robinson Brothers, Inc., 368 So.2d 186 (La. App. 1 Cir. 1979). Second, the dealer must be denied indemnification if the manufacturer proves that the defect was easily remediable. Lehn v. Clearview Dodge Sales, Inc., 400 So.2d 317 (La.App. 4 Cir. 1981).
The only evidence, in the instant case, which would tend to indicate that the defect was not present at the time of the acquisition of the automobile by Daigle from GMC is the testimony of Camperlingo that the T-top's weatherstrips had been overtightened. However, since plaintiff noticed the defect shortly after the purchase and Camperlingo did not inspect the automobile until more than one year after the purchase, the record does not support a conclusion that the redhibitory defect was not present when the dealer acquired the car from GMC.
The trial court based its decision, denying Daigle indemnity, on the ground that the defect was easily remediable. Both Camperlingo and Laurent testified that the leaks in the T-top could easily be repaired. Camperlingo testified that it was only necessary to replace the gaskets and weatherstripping to make the required repairs. Opposed to the testimony that defects were easily remediable is Daigle's attempts to repair the automobile on at least six occasions. We believe a review of the entire record reveals that there is a reasonable basis for the trial court's conclusion and we do not find that it is clearly wrong. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Under Article 2520 of the Louisiana Civil Code, a buyer is entitled to rescission if the defects in the thing bought render it absolutely useless or so inconvenient or imperfect that an informed buyer would not have bought it. Peterson v. Coleman Oldsmobile, Incorporated, 393 So.2d 372 (La. App. 1 Cir. 1980). The defects in the automobile in the instant case can not be considered of the magnitude necessary to support rescission of the sale. Hence, the trial court was correct in allowing plaintiff a reduction, rather than a rescission. See Cassey v. Arnaudville Industries, Inc., 393 So.2d 215 (La.App. 1 Cir. 1980).
In the present case, the trial court granted Leonard a $1,500.00 reduction in the sale price of his automobile. On appeal, Daigle contends that the trial court's award was excessive and should be reduced.
The proper measure of damages in an action to reduce the sale price is the difference between the actual sale price and the price a reasonable buyer and seller would have agreed upon, if they had both known of the defect. Couch v. Frichter's Sportsmen's Haven, Inc., 365 So.2d 901 (La. App. 4 Cir. 1978), writ denied, 367 So.2d 1185 (La.1979); Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1 Cir. 1975). The trial court has discretion in assessing the amount of a reduction, and its award should not be modified in the absence of clear abuse. Lemoine v. Hebert, 395 So.2d 353 (La.App. 1 Cir. 1980).
Further, Daigle contends that the trial court should have limited the reduction to the amount of repairs. We disagree. The courts have consistently recognized a plaintiff's right to be compensated for uncured defects, curtailment of use and the considerable inconvenience caused by the defects, as well as the expenses of the repairs. Menville v. Stephens Chevrolet, Inc., 300 So.2d 858, 861 (La.App. 4 Cir. 1974), writ denied, 303 So.2d 186 (La.1974). On this issue, the Court in Menville stated:

*581 "When a judge orders reduction of the sale price, one of the principal elements in formulating the award is the cost of repairing the defects which existed at the time of the sale. The cost of repairs, however, is not necessarily the sole measure of the diminution of value resulting from these defects. If the defects are few in number and quickly and simply remedied, the cost of repair may well be the only consideration. But when the defects are numerous and the repairs lengthy and frequent, then a greater reduction is warranted, because a forewarned buyer would not reasonably pay the full price, reduced only by the cost of repairs, if he knew the extensive repairs of the defects would significantly curtail his use and cause him considerable inconvenience and aggravation ...."
In the instant case, plaintiff suffered considerable inconvenience and aggravation and sustained a significant curtailment of his use as a result of the leaks in the T-top. The record shows that he had to bring his car in for repairs on at least six occasions, yet there are still uncured defects. Plaintiff testified that on one of these occasions Daigle kept the car for two weeks. Also, plaintiff and witnesses called on his behalf testified as to the inconvenience and discomfort suffered while riding in the car, as a result of the leaks. Under the circumstances, we find that the trial court was within its discretion in awarding a $1,500.00 reduction in the purchase price. We conclude that the court, in making its price reduction, properly considered the numerous problems involved herein, the frequent inconvenience associated with the attempted repairs, the actual damage caused by the water leaks, the cost of repairing the defects, the uncured defects and other items that would go toward diminishing the value of the automobile. See Wade v. McInnis-Peterson Chevrolet, Inc., supra.
For the reasons assigned, the judgment appealed is affirmed at the costs of Daigle Pontiac-Buick-GMC, Inc., defendant-appellant.
AFFIRMED.