420 So.2d 1206 (1982)
Walter VOORHIES, et ux., Plaintiff-Appellee,
v.
Josephine LIVINGSTON, et al., Defendants-Appellants.
No. 82-172.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
Voorhies & Labbe, Robert A. Lecky, Lafayette, for defendants-appellants.
James Wattigny, Jeanerette, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
This case began as an action in redhibition seeking recission of the sale of a residence based on defects in the foundation. At the beginning of trial, the purchasers announced that they would limit their demand to a reduction of the price. The parties thereupon stipulated the amount by which the sale price was to be reduced in the event of a decision favorable to plaintiffs. *1207 The trial judge decided for the purchasers and awarded them the stipulated sum of $7,750 and costs. From this judgment the sellers appealed. We affirm.
The appellants do not contest that defects in the foundation of the residence existed at the time of sale. Their defense at trial, and their contention on appeal, is that the defects were apparent, that is, discoverable by the buyers by simple inspection, that the defects were therefore not redhibitory vices, and that accordingly the purchasers should not be permitted to recover.[1] The single issue on appeal is whether the trial court erred in finding that the admitted defects were not discoverable by simple inspection.
The facts reveal that the house was built in the early 1960s in the Blue Haven Subdivision of Iberia Parish. In January 1972 it was purchased by Lawrence Livingston and his wife. Lawrence Livingston subsequently died and his widow, Josephine Livingston, continued living in the residence until July 1979 when she and her three sons, who inherited their father's interest, sold the property to the present owners, Walter Voorhies and his wife, the plaintiffs herein.
The new owners made their first discovery of evidence of foundation failure in early 1980 when, during renovation involving the back of the house, paneling was removed revealing a major crack in the outside back wall. This led to the discovery of extensive foundation movement culminating in 1981 in major foundation repairs which accounted for most of the stipulated damages.
The evidence is clear that serious foundation cracking was present at least seven years before the sale from the Livingstons to the Voorhies. Ernest Sigura, the contractor who laid the original foundation, testified that for some unremembered reason he inspected the house in 1972, the same year the Livingstons bought it. He observed to his professional dismay that there was a crack on the back brick wall near the sliding glass doors. The crack was obvious to anyone looking at the wall and indicated that the foundation was settling. This one crack was all he saw at the time.
Not long after the Livingstons moved in in 1972, they roofed and enclosed the patio, making of it an additional room on the house. The crack observed by Segura was along that portion of the back of the house enclosed by the patio room. This wall was paneled, covering the crack. Mrs. Livingston testified that although she assisted some in the construction of the patio room by her late husband, she did not notice that crack.
The patio room was on a separate foundation from the rest of the house. In 1979 this room had foundation problems of its own. These were pointed out by Mrs. Livingston to Voorhies during his estimated 12 to 20 visits to the house before the sale was closed. No defects involving the main structure were ever pointed out by Mrs. Livingston because, according to her testimony, she was not aware of any cracking or separating either in the walls or the foundation. Voorhies testified that in his numerous visits he did not see any such defects.
Andrew Armentor, an expert appraiser for Iberia Savings and Loan Association, inspected the house for appraisal purposes about five weeks before the Voorhies purchase. The inspection took 20 to 30 minutes. He found nothing out of the ordinary with the outside of the house and determined that it was in good condition.
Some eight to nine months after his purchase Voorhies undertook to renovate the *1208 patio room. When the paneling was removed a crack was discovered in the brick veneer extending from one end of the room to the other, approximately 40 feet in length and a half inch in width. This was the first time that Voorhies was aware of the existence of this crack. About a month later he found another crack underneath a window on one side of the house. This crack was concealed by a yucca plant. He also discovered a crack blocked from view by the air conditioning unit. He found other cracks in the foundation concealed by monkey grass that surrounded the house. Four or five months later a crack was observed at the front entrance of the house. This crack extended across the foundation from the front door through the den to the bathroom door. It caused damage to 24 ceramic tiles on a new floor which had been laid by Voorhies after he purchased the house.
It was at this point that Cecil Causey, owner of Louisiana Soil Stabilization Industry, Inc., was called in. He found that the foundation slab had cracked from the front to the back door, causing one side of the house to separate from the other and settle four and a half inches. With the help of mechanical jacks, the sunken side was raised and underpinned. Causey also injected a lime slurry under the house to minimize further damage to the foundation.
We quote from the trial court's reasons for judgment:
"There's quite a bit of vegetation around the edges of the house. The Court finds, from the defendant's explanation of this vegetation, consisting of a yucca plant which has sharp spines or spears from top to bottom, that she planted these plants under the window as a sort of a help against burglars entering the windows, because they were very sharp, and would tend to discourage anybody from attempting to come in the windows where they were located. It happens that some of the worst cracks that were found in the house, where the cracks were started, were largely under these windows, and to some extent these yuccas and the other vegetation, the rose bushes, tended to obscure the worst part of these cracks. However, the cracks extended beyond the outside of this vegetation. But the Court can only conclude that the cracks in the exterior of the house, at least to these not experienced people, both the plaintiff and the defendant, and even to an experienced inspector like Mr. Armentor, were not so obvious as to be readily observable. In the opinion of the Court this has significance because it does not establish any bad faith on the part of the sellers of this residence, and neither does it establish the fact that the buyer should have been on notice that these were readily observable defects, and he should have been on notice before buying the house, which of course could result in his failiing (sic) to recover, if the cracks were that bad. But in the opinion of the Court, the exterior visible damage was not such as to make the Court feel that the vendor, the Livingstons, were aware of this damage, and neither was it so obvious that the vendee, the plaintiffs herein, should have been put on notice of this damage so as to bar their recovery."
The trial court also stated in its reasons for judgment that it had read and considered the case of Prat v. Heymann, 410 So.2d 343 (La.App. 4 Cir.1982). We quote from Prat v. Heymann:
"In order to determine whether a defect is apparent by a simple inspection the courts have used a reasonable standard which is discussed Pursell v. Kelly, 152 So.2d 36 (La.1963) at p. 41.

`The proper test to be applied to this case, we think, as in all other cases of this kind, is whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damage in the premises.'
"In Fraser v. Ameling, 277 So.2d 633 (La.1973), the Supreme Court reaffirmed the reasonable man standard but explained that while an inspection connotes more than a casual observation the buyer need not inspect with expertise or `deface' *1209 the thing purchased while inspecting it."
In the Prat case the home purchased by the plaintiffs contained severe cracks and a sinking foundation. When the plaintiffs inspected the home, it appeared to be free of any defects with the exception of a section of faded wallpaper and a minor crack in the front wall which the defendant agreed to repair at her cost. Approximately six weeks later the plaintiffs testified that they began having difficulty in opening and closing the front door and observed a rather substantial crack on the inside of the entrance porch and eventually noticed a very large crack in the front wall just below the window. The realtor and two other witnesses also testified that the house appeared to be well kept and in excellent condition. However the witnesses for the defendant, including two prior prospective purchasers, stated that they had noticed the defects on their own and that they were readily apparent. The expert witnesses testified that it would be extremely difficult for a layman to notice any foundation sinkage. The trial court concluded that the house contained redhibitory defects and that these defects were not readily apparent. The appellate court concluded that this factual determination was not manifestly erroneous.
The law is clear that the determination of whether or not a defect is latent or apparent by reasonable inspection is a factual determination which will not be disturbed by the appellate court unless manifestly erroneous. Prat v. Heymann, supra; and Aucoin v. Fontenot, 334 So.2d 773 (La.App. 3 Cir.1976).
In the present case the testimony is undisputed that the cracks in the house were not apparent by reasonable inspection. The plaintiff testified that in his 12 to 20 visits to the home prior to purchase that he conducted a thorough inspection of the home and failed to notice the defects. The cracks in the walls were either hidden behind foliage or paneling. The appraiser for the savings and loan institution also failed to notice the defects during his inspection of the home prior to purchase. The defendant, Mrs. Livingston, also testified that during the seven year period that she lived in the house she failed to notice any of the cracks in the walls. Under the circumstances it is clear that the trial court was not manifestly erroneous in his factual determination.
Although plaintiff has filed a brief in this court seeking additional damages and contending that the trial court erred in finding the vendors in good faith precluding the award of an attorney's fee, the plaintiff has neither appealed nor answered appellants' appeal. Under the circumstances this court may not consider the claims made by plaintiff in brief alone. La.C.C.P. Art. 2133; Ingram v. Reliable Finance Company, Inc., 410 So.2d 768 (La.App. 3 Cir.1981); and Daigle v. Robinson Brothers, Inc., 368 So.2d 186 (La.App. 1 Cir.1979).
For the foregoing reasons, the judgment of the trial court is affirmed, at appellants' costs.
AFFIRMED.
NOTES
[1] "Art. 2520. Redhibition, definition

"Art. 2520. Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
"Art. 2521. Apparent defects discoverable by buyer
"Art. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."