448 So.2d 173 (1984)
Norton NELKIN
v.
John E. PIOTROWSKI, d/b/a Jefferson Auto Brokers.
No. 83-CA-662.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*174 Dinwiddie & Brandao, Edward J. Brandao, Metairie, for plaintiff-appellant.
Steve J. Mortillaro, Metairie, for defendant-appellee.
Before CHEHARDY, CURRAULT and GAUDIN, JJ.
CHEHARDY, Judge.
Norton Nelkin instituted this suit against John E. Piotrowski, doing business as Jefferson Auto Brokers, as a result of alleged defects in a used 1977 Volkswagen purchased from defendant in 1979.
Within two months of the sale plaintiff contends various defects manifested themselves, necessitating numerous repairs. He alleges redhibitory defects and itemizes damages in the sum of $14,128.00 as follows:

Return of purchase price $4,125.00
Cost of repairs to date (January 13,
 1980) 1,500.00
Distress and inconvenience 5,000.00
Attorney's fees 3,500.00

Following trial on the merits, judgment was rendered in favor of plaintiff in the sum of $290.68. Plaintiff has appealed.
The record reflects the following facts:
After test-driving the car on a few occasions over a period of several days, plaintiff agreed to purchase the automobile for $4,125.00. The price included sales tax, license fees, and $250.00 for an optional warranty for 12 months or 12,000 miles issued by Taylor and Associates. The purchase agreement provided for repairs to the fuel gauge, antenna, replacement of a missing jack, and fouled plugs. These repairs were made before the car was purchased on October 13, 1979. The speedometer reading was 31,000 miles.
Before buying the car plaintiff noticed a grinding noise. This was supposedly corrected but it still sounded the same to plaintiff. Plaintiff accepted the explanation that this was because of the front wheel drive design of the car and went ahead with the purchase.
Two or three weeks after the sale while plaintiff was returning from Baton Rouge at a speed of 55 miles per hour the car suddenly "died." It was determined the alternator was loose and temporary repairs were made at a filling station.
After his return to New Orleans plaintiff took the car to his own mechanic, and on November 7, 1979 the alternator bracket was straightened and aligned, the belt was replaced, the engine was tuned and the valves were adjusted. The bill, including parts, was $157.56.
The following month more permanent repairs were made when the alternator belt was again replaced along with grommets, *175 the battery was charged and the oil filter changed. The bill was $133.12.
Plaintiff complained the car used excessive amounts of oil and that there was an oil leak and the mechanic recommended a complete motor overhaul. Nelkin so advised Taylor and Associates, the warranty insurer, and they approved.
The overhaul was performed on January 14, 1980. Plaintiff paid the cost of $955.08 and sought to recover from Taylor, but the corporation had gone bankrupt. Plaintiff then called upon defendant to pay for the repairs. This was the first notice defendant had that plaintiff was having any problems with the car. He denied responsibility, concluding plaintiff had purchased warranty insurance and it was the insurer's obligation, not his.
Testimony at the trial was given by plaintiff Nelkin, Walter K. Rupert, the expert mechanic who made the repairs, and defendant Piotrowski.
Plaintiff testified to the problems referred to above and other difficulties with the car in 1980, 1981 and 1982. (The suit was filed in 1980.) He stated that had he known of the problems he would not have purchased the car.
After January 1980 he continued to have problems with the alternator, the electrical system, water seeping into the back when it rained and an overheating problem.
The problem in the electrical system is not reflected in the bills until 1982, at which time the speedometer reading was 54,924 miles. Other items in the bill reflect normal maintenance charges, as admitted by plaintiff, such as brake relining in 1982.
Mr. Rupert, the expert, testified the alternator bracket in this model is poorly designed and the belts do not stay adjusted because vibration from the compressor shakes the bolts and wears out the rubber grommets which absorb the vibration.
Relative to the January 1980 repairs, Rupert testified Nelkin complained the car was using a lot of oil and the engine was running poorly. This was due to the fact that the valve stems were allowing oil to get into the combustion chamber and the engine was running hot because the rings were also worn out.
Based on his experience as a mechanic who works a great deal on Volkswagen automobiles he knew the manufacturer had a factory recall to replace the valve seal stems. When this occurred he replaced the seals, but put on the wrong seals. This caused the car to continue to use oil, but not as badly. When he redid the job the second time with the correct seals, there was no further problem. Rupert also indicated that under ordinary circumstances the valve seal stems usually start using oil at about 30,000 miles.
Piotrowski testified the car was in perfect condition when it left the lot and everything was in working order when Nelkin took delivery. He had made the necessary repairs called for in the bill of sale and Taylor and Associates had inspected the car prior to issuing the warranty. He had no knowledge of any defects in the car and was unaware of any problems until plaintiff called him three months after the purchase.
He was unaware of alternator design problems in that model, but was familiar with plaintiff's complaint of a grinding noise prior to the sale. He attributed this to the new concept introduced by Volkswagen in 1975 of a transverse engine, and stated that factory recalls for service or design defects are common in new concepts.
Piotrowski stated at the time plaintiff took title to the car it had been checked completely. It was clean and serviceable and drove excellently. There was vibration at the time of sale but this is inherent in all transverse mounted engines. There were fouled plugs and the car was blowing black smoke which was fuel related, but this problem was corrected before the sale.
Appellant contends the trial court erred in (1) failing to hold the defects were redhibitory, entitling plaintiff to rescission or a further reduction in the purchase price, and (2) failing to award attorney's fees.
*176 Under LSA-C.C. art. 2520 a buyer is entitled to rescission if the defects in the thing sold render it absolutely useless or so inconvenient and imperfect that an informed buyer would not have bought it. Leonard v. Daigle Pontiac-Buick-GMC, Inc., 413 So.2d 577 (La.App. 1st Cir.1982).
The defects in the automobile in the instant case cannot be considered of such magnitude to support rescission of the sale. After all plaintiff has used the car for three years after the sale and had driven an additional 25,000 miles. Hence the trial court was correct in allowing plaintiff a reduction, rather than rescission. See Cassey v. Arnaudville Industries, Inc., 393 So.2d 215 (La.App. 1st Cir.1980).
In the present case the court awarded $290.68, the cost of the November and December repairs.
The proper measure of damages in an action to reduce the sale price is the difference between the actual sale price and the price a reasonable buyer and seller would have agreed upon if they had both known of the defect. Couch v. Frichter's Sportsmen's Haven, Inc., 365 So.2d 901 (La.App. 4th Cir.1978).
One of the principal factors in making such an award is the cost of repairing the defects. Depending on the circumstances this may be the only consideration. There being no evidence in the record to show a diminution of the value of the car, other than the cost of repair, apparently the trial court found the necessary repairs made in November and December were satisfactory, otherwise he would have made an additional award to plaintiff. We cannot say he was clearly wrong in that respect.
The court found defects with the alternator and engine existed at the time of sale but were not of such a nature as to warrant rebuilding the engine three months later. It also found that plaintiff failed to carry his burden regarding damages for inconvenience in that he failed to show any actual monetary loss. We agree with that conclusion.
Nor do we find evidence to support plaintiff's contention that all of the repair bills related to vices inherent at the time of sale.
Relative to appellant's second contention, to recover attorney's fees the buyer must prove the seller had knowledge of the defect. It is sufficient for the buyer to prove actual or constructive knowledge by the seller.
Thus if the seller knew of the defect and failed to declare it to the buyer, the seller is liable for reasonable attorney's fees. Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir. 1975); Juneau v. Bob McKinnon Chevrolet Company, 260 So.2d 919 (La.App. 4th Cir.1972). The court found plaintiff failed to prove defendant had actual or constructive knowledge of these defects at the time of sale. Defendant was not the manufacturer. He was merely a used car salesman; thus problems known to the manufacturer or the mechanic were not necessarily known to the seller. The court thus refused to grant attorney's fees. We agree.
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED.