jjWICKER, Judge.
This appeal arises from an action in redhi-bition filed on behalf of Joan Bourgeois, wife of and Joseph F. Fricano, plaintiffs/appellees, against Cathy Ford, wife of and Ronnie Dale *269 Bennick, defendants/appellants. Bourgeois and Frieano sought a recession of the sale of a house with a cracked slab purchased from Ford and Bennick or alternatively a reduction in the purchase price. The trial judge awarded damages in quanti minoris to Bourgeois and Frieano in the amount of $9,600.00 plus legal interest and costs. Ford and Ben-nick now appeal. We reverse.
On May 30, 1986 Bourgeois and Frieano purchased a house from Ford and Bennick. The purchasers contend that one week after the sale they noticed the house was leaning. On June 10,1986 they had the house inspected. On that date they became aware the slab was cracking. The trial court concluded the crack in the slab was a defect which existed prior to the sale and that this defect was not an apparent defect.
On appeal the sellers specify as error the trial judge’s finding the defect was not apparent, the admission of the deposition testimony of a witness taken after the conclusion of trial when that witness had not been subpoenaed and no explanation was given for allowing the testimony; the awarding of damages for repairs and the awarding of damages for inconvenience. Since we find manifest error in the trial judge’s failure to find the defect was apparent we pretermit a discussion of the remaining specifications of error.
Bourgeois testified she is a licensed realtor who was actively involved in selling real estate since 1982. An ^agreement to purchase the house was executed February 7,1986 and the act of sale of the Ford/Bennick house took place May 30, 1986.
She stated she only walked through the house one time prior to the act of sale. She thought it was probably late January, 1986 when she, her husband, and their youngest daughter viewed the interior of the house. However, she did enter the den and garage portions at another time prior to the act of sale. She also transferred plants on a few occasions before the sale. The plants were placed in the rear corner of the yard and a planter was positioned by the patio. She also worked in the front yard. Her husband repaired the gate in the front.
Bourgeois also testified that during her visit prior to the sale she noticed a crack in the hallway. She explained: they said it had been there prior to them buying the house and it had never gotten any worse. It was just settlement.
She stated the purchase agreement authorized her to make inspections of the house prior to the sale and that she did not do so. She began requesting inspections at “the very end” but Ford “always had something to do” and Bennick told her he would not hide anything.
Within a week after the sale she first noticed the back bedroom “was leaning and [she] was walking on a slant.” She contacted the broker and someone came out to inspect the house on June 10, 1986. She stated cracking bricks and a cracking slab were pointed out to her. At that time she noticed these cracks. She described one of the cracks observed in 1986 as:
There’s a bedroom window on the side here and there are cracks going from the slab all the way up. There’s a separation that is—
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
I’d say about and inch and a half, two inches maybe.
Ford testified she became a licensed realtor in 1985. She and Bourgeois worked out of the same office. She and her husband had purchased the house in 1982. She denied being aware of any interior or exterior cracks as well as any slope in the bedroom lafloor. However, she admitted the toilet leaned. From the date of the agreement to purchase to the date of the sale the purchasers had access to the house. She did not recall a conversation with Bourgeois regarding a crack in the hallway.
Bennick testified the toilet leaned due to uneven concrete. He leveled that section of the floor. He did not notice that room sloped or that any other room did so. He denied seeing a crack in the slab while he lived there. He also denied seeing any interior cracks.
Ronald P. Cressy testified for the plaintiff as an expert in the field of civil engineering.
*270 He inspected the house on January 28, 1987. He stated:
the left rear corner of the slab had settled approximately two inches. And this settlement caused some cracks in the slab, caused some cracks in the brick veneer at the rear of the house. Of course sloping also reflected itself in the floor in the interior of the house. You could feel the slopes, see the slopes in there ...
In his opinion the slab moved because the fill in the rear of the house had not compacted properly. Additionally, since the concrete slab was not as strong as it was designed to be the movement of the slab was worsened.
He was asked whether this condition was present in May, 1986 and stated “in all probability it was to a large degree.” He noted that the bathroom floor had been patched indicating the condition “had probably been in existence for a while.” He also based his opinion on the extent of sinkage he observed.
He testified that when there is settling of a portion of a slab there is generally cracking of the interior walls. He inspected the interior of the house and noticed interior wall cracks at two windows. He explained that “[t]he brick veneer is where the cracking was most noticed and where the slope of the slab was very very obvious.”
He was asked to give an estimate of the cost of repair but stated he has never estimated this type of work.[1]
UWe find the holding in Sievert v. Henderson, 506 So.2d 743 (La.App. 1st Cir. 1987) applicable.
In Sievert at 745 the court, in considering a settlement defect, quoted Pursell v. Kelly, 244 La. 323, 152 So.2d 36, 41 (1963), a termite damage case, and held:
The proper test to be applied in cases of this kind is whether a reasonably prudent buyer acting under similar circumstances would have discovered the differential settlement problem prior to the act of sale.
We conclude Bourgeois by her own admission was on notice of a settlement problem once she observed the crack in the hallway and was informed it was settlement. As explained in Pursell, supra 152 So.2d at 41 and adopted by Sievert 506 So.2d at 745:
When the defect complained of is partially apparent, the buyer, who, nevertheless, purchases the thing without further investigation must be held to have waived his right to sue in quanti minoris.
The Louisiana Supreme Court has held in Rosell v. Esco, 549 So.2d 840, 844-45 (La.1989):
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong, [citations omitted].
Bourgeois testified she had asked Ford several times to make inspections but “she always had something to do.” She stated isBennick informed her he would not hide anything. Thus, Bourgeois’ testimony implies she was prevented from making further inspections. However, this testimony is contradicted by her other testimony that she and Frieano did return to the house prior to the sale to transfer plants and repair a gate. We find manifest error in the trial judge’s *271 evidently concluding Bourgeois and Fricano were prevented from investigating further.
We also find manifest error in the trial judge’s conclusion the defect was not apparent. Bourgeois’ and Cressey’s testimony indicate the exterior crack in the veneer was visible to simple inspection.
Simple inspection was defined in Payne v. O’Quinn, 565 So.2d 1049, 1051 (La.App. 3rd Cir.1990) as follows:
Simple inspection is one made by a reasonably prudent buyer, with no special knowledge, and under no obligation to deface the thing purchased while inspecting it. [citations omitted].
In St. Claire v. Lewis, 550 So.2d 737, 739 (La.App. 2nd Cir.1989) the defendants/sellers painted over and repaired cracks in the inside walls so that the plaintiffs/buyers were not on adequate notice of these concealed defects. The St. Claire court affirmed the trial court’s rescinding the sale due to the subsequent discovery of extensive structural problems. However, in Buchanan v. McMillan, 311 So.2d 469, 470 (La.App. 4th Cir.1975) the court concluded from the evidence that patched cracks in the exterior bricks were “visible to the naked eye” and thus apparent precluding recovery by plaintiffs for the defect of sinkage. In the instant case the crack in the hallway had not been concealed; it was obvious. Bourgeois had also been informed there was settlement.
Furthermore, a reasonably prudent buyer would have been able to appreciate the seriousness of a situation in which there was a two-inch crack in the brick veneer. Had the buyers done a simple inspection they would have discovered the exterior crack without defacing any portion of the house.
6 In Cory v. Carona, 527 So.2d 495, 496-97 (La.App. 5th Cir.1988); writ denied, 532 So.2d 769 (La.1988) we upheld the trial judge’s conclusion the defect was not discoverable by simple inspection. In Cory, unlike the present case, the buyers had performed a simple inspection. In addition a real estate agent and an appraiser had also inspected the house and found no indication of structural problems prior to the sale.
The second circuit in Pickerel v. Long, 286 So.2d 430, 431 (La.App. 2nd Cir.1973) considered a situation wherein the buyer alleged that after the sale he discovered “large cracks around windows and separation of the bricks in several places in the wall” as well as buckling in the kitchen and bathroom floors. While the court found no evidence of floor damage it did find the cracks in the brick veneer wall were apparent and discoverable upon simple inspection.
In Voorhies v. Livingston, 420 So.2d 1206 (La.App. 3rd Cir.1982) the court concluded that cracks in the walls were hidden by foliage or paneling and not discoverable upon simple inspection. The worst exterior cracks were hidden by vegetation which consisted of a yucca plant with sharp spines or spears. These defects in the foundation were found to be not readily apparent. In Voorhies the buyers had inspected the house on 12 to 20 occasions and failed to notice the defects. An appraiser also failed to notice these as did the seller.
We conclude that by failing to investigate further the partially apparent settlement problem Bourgeois and Fricano waived their right to sue in quanti minoris and we find reversible error in the trial judge’s awarding damages. Accordingly, for the reasons stated, the judgment in favor of the plaintiffs, Joan Bourgeois, wife of/and Joseph F. Fricano, and against the defendants, Cathy Ford, wife of/and Ronnie Dale Bennick, in the amount of $9,600.00. legal interest, and costs is hereby reversed. Judgment is now rendered in favor of |7defendants, Cathy Ford, wife of/and Ronnie Dale Bennick and against plaintiffs, Joan Bourgeois, wife of/and Joseph F. Fricano, dismissing plaintiffs’ claims with prejudice at plaintiffs’ cost.

REVERSED AND RENDERED

. No evidence was presented at trial regarding the cost of repair. Despite defense counsel's timely objection the trial judge held the trial open and allowed the taking of a post-trial deposition, five months later, of a witness on this issue where that witness had not been subpoenaed for trial and no explanation given for his absence or the failure to subpoena him for trial.