419 So.2d 529 (1982)
Bipin R. AMIN, et ux., Plaintiffs-Appellees,
v.
Leon Pinkney HEAD, Jr., et ux. and James E. Townsend, et ux., Defendants-Appellants.
No. 14949.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1982.
Rehearing Denied September 24, 1982.
*530 Dimos, Brown, Erskine & Burkett by Donald R. Brown, Monroe, for defendants-appellants.
Shotwell, Brown & Sperry by George Wear, Jr., Monroe, for plaintiffs-appellees.
Before MARVIN, JASPER E. JONES, and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this redhibition action, defendant subdividers of a residential subdivision appeal a judgment in favor of the purchasers of a residence and lot which was found susceptible of flooding. The judgment awarded an $8,650 reduction in the purchase price, $134 damages, and $3,500 attorney fees. Plaintiffs' answer seeks to rescind the sale and to increase the awards for expenses and attorney fees. We amend to increase attorney fees and otherwise affirm.
In six assignments, defendants contend that the trial court erred in its findings that the house was susceptible to flooding, that this susceptibility was a nonapparent defect, that damages and attorney fees were owed, and in its determination of the reduction on a "cost of cure" basis and of the expert witness fee.
We find that the record in all respects supports the trial court and does not show that the trial court has abused its discretion.

SUMMARY OF FACTS
Defendants, Head and Townsend, created the subdivision in stages beginning in 1977. A natural drain existed across Lot 5 of Unit 1 of the subdivision. The subdividers altered somewhat the natural drain and provided a drainage system by using the streets in the area and constructed underground drains. In 1978, Head acquired for himself the subject lot and hired Townsend to construct a residence on the lot. Head moved into the home in January 1979. Defendants caused to be designed a 24" underground *531 drain in an attempt to make this lot in a cul de sac suitable for residential purposes. This drain, with one 90° and two 45° turns in it, was found to be not as efficient as a straighter drain.
A few months after Head moved into the home, a relatively heavy rain deposited large amounts of mud on his patio, carport, and driveway, and a small quantity of water on the floor of his kitchen-dining area. Head and Townsend then attempted to remedy this situation by opening a junction box in the drain and providing a grate through which ground water could drain into the system and by building on the rear of the lot a retaining wall of cross ties about two feet high. These plats show the relationship of the lot, house, and underground drain:

In November 1979 Head sold the house to the plaintiffs husband and wife without mentioning drainage or flooding problems. A few weeks later a heavy rain caused ground water to pour over the retaining wall and through plaintiffs' carport. When plaintiffs complained, Head told them they would have to keep the grate unclogged and clear of debris. In May 1980, after plaintiffs had worked several hours at 15-30 minute intervals during a rainstorm to clear the grate and had retired to bed, ground water from the continuing rain again poured over the retaining wall and *532 seeped under the rear door of the home into the kitchen-dining area. Plaintiffs then filed this action.
Before trial of this case, defendants and the public authorities caused to be installed in a neighboring public street a catch basin designed to alleviate some of the drainage problems. Notwithstanding this effort, ground water from a heavy rain again poured over the wall and left mud and debris on the patio and carport of plaintiffs' home in October 1980. No water entered the home at this time.
Defendants' contention that the house was not susceptible of flooding is without merit because the record establishes that the house will suffer some water invasion if the grate over the junction box that defendants installed in 1979 is not frequently cleared of debris during a rainstorm.
Defendants' contention that it should have been apparent to the plaintiff husband, who is a civil engineer with a master's degree, that the lot lies in a natural drain is without merit because at the time of the sale the defendants thought they had "cured" the situation by the junction box grate and retaining wall and it is obvious the house itself is of a higher elevation than the lot. When the house was constructed, even the defendants did not then believe it or the lot was susceptible to the inconvenience of flooding, notwithstanding that they had more "knowledge" from their observation and experience than did plaintiff when he purchased from defendants.
Head is responsible for attorney fees and damages under CC 2545 because he knew of the susceptibility of flooding and failed to disclose this to the purchasers. Townsend and Head created or salvaged the lot and made it suitable for financing as a residential site by use of the particular underground drainage system. In this sense, Head and Townsend "manufactured" this low lying lot into one that was merchantable for financing as a residential site. As manufacturers they are presumed to know the defects in the thing sold and are liable for attorney fees and damages. Harris v. Bardwell, 373 So.2d 777, 782 (La.App. 3d Cir. 1979). We need not speculate as defendants suggest in brief about results in many factual situations that may arise out of our adoption of the trial court's finding that this lot was "manufactured". This conclusion is strongly supported by the evidence and is not clearly wrong under the circumstances shown.
Head and Townsend sought to "cure" the drainage defect by putting the grate over the junction box and by constructing the retaining wall at the rear of the lot. Head testified that he did not tell the purchaser about drainage problems because he thought the problem he experienced had been solved. It was not error for the trial court to impliedly find that Head's "thoughts" in this respect were not well founded because he apparently knew, and later told plaintiffs, that flooding would still occur if the junction box grate was not frequently cleared of debris. Compare Busenlener v. Peck, 316 So.2d 27 (La.App. 1st Cir. 1975).
We also find without merit defendants' contention that the cost of cure suggested by an experienced and trained engineer is more plausible and factually supported than is the reduction in price based on factors including the cost of cure suggested by plaintiffs' expert appraiser who is not an engineer. Defendants' suggestion was to modify the drain box and to cut "swales" or slight ditches in plaintiffs' yard. Plaintiffs' suggestion was to build a retaining wall of concrete and to install an additional underground drain and drain box. The trial court has great discretion in determining what will reasonably compensate a plaintiff for his inconvenience. In this respect the trial court has made a factual finding that is supported by evidence and which we may not disturb without a finding of clear error. Additionally, we note that the cost of cure is relevant to the court's determination to reduce the price rather than rescind, and to the amount of the reduction. We find no error and will not disturb these determinations.
*533 Defendants also complain that the expert witness fee should be reduced from $300 to no more than $200. No abuse of discretion, however, has been shown. The expert appraiser performed the same function as did the appraiser in Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir. 1977), and consulted engineers and others in an attempt to determine a solution to the flooding problem.
Even though elements supporting rescission are present, CC 2543 affords discretion to the trial judge to reduce the price of the thing sold where the defect in the thing might be corrected. Boudreaux v. Riley Buick, Inc., 415 So.2d 970 (La.App. 2d Cir. 1982). We find no abuse of this discretion and decline to order a rescission of the sale and grant other relief plaintiffs seek in their answer to the appeal.
The attorney fees fixed by the lower court are not unreasonable and are supported by this record. To compensate plaintiffs' attorney for the time and effort expended after the trial of this case, we amend the judgment to increase the award of attorney fees to $4,350.
For detailed reasons assigned by the trial court, which we adopt and here summarize and supplement, the judgment is amended to increase the award of attorney fees, and as amended, is AFFIRMED.
FRED W. JONES, Jr., Judge, dissenting in part and concurring in part.
The majority opinion (as does the trial court opinion) seems to posit liability of both Townsend and Head on the premise that this controversy involves the sale of a defective lot, and then proceeds to find that the landowners-subdividers, as "manufacturers" of that lot, were presumed to know of its defect. I believe, to the contrary, that the defect consisted of the susceptibility of the house to flooding. After all, if the house had not been constructed on the lot, how would the latter have been defective? Viewed in this context, there is obviously no liability on the part of Townsend who sold his interest in the lot before the house was built upon it.
Even if the defect was in the lot, I do not agree that a landowner who subdivides his property becomes a manufacturer of the lots therein. The social policy underlying the jurisprudential rule that a manufacturer is presumed to know of the defects in his product is sound, because it affords the unwary consumer needed protection. Even though there is no privity of contract between the manufacturer and the claimant-consumer, the maker of the product is better able to bear this economic burden. Media Production Consultants v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972). It seems rather farfetched, however, to classify a landowner-subdivider as a manufacturer of lots simply because he has them platted out and, perhaps, serviced by streets and other improvements.
As cogently pointed out by counsel for defendants, the implications of this new holding are disturbing. Suppose, for example, the vendee of a subdivision lot builds his home on unstable soil and the foundation starts cracking. Will the subdivider, however remote in title, be liable to the homeowner as the manufacturer of the lot? Other variations of this maze we may be entering can be readily envisioned.
For these reasons, I respectfully dissent from the majority opinion insofar as it affirms the trial court judgment against the defendant Townsend.
On the other hand, because the record supports the conclusion that the defendant Head knew of the defect in the house which he sold to plaintiffs, I concur in the affirming of the trial court judgment as to that defendant.