446 So.2d 895 (1984)
Charles BUCK
v.
Forest J. ADAMS, et al.
No. 83 CA 0369.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
*896 Russel J. Cremaldi, Morgan City, for plaintiff, appellee.
P. David Carollo, Slidell, for defendants, appellants.
Before COVINGTON, COLE and SAVOIE, JJ.
SAVOIE, Judge.
This is a redhibitory action to rescind the sale of a shrimp boat. The trial court rendered judgment in plaintiff's favor rescinding the sale and ordering defendants to pay all costs. Defendants appealed, alleging the defect was not redhibitory in nature and, alternatively, that it was discoverable upon simple inspection. We find no error in the trial court's conclusion that the boat was defective, and that such defect was not discoverable by simple inspection. Accordingly, we affirm.
The parties stipulated that on August 28, 1980, plaintiff purchased the shrimp trawler, Papa White, from defendants for $47,000.00. At the time of sale, the Papa White was a 13-year-old wood-bottom boat.
Plaintiff became aware of the boat's availability for purchase by defendants' newspaper ad.[1] After contacting defendants in reference to this ad, plaintiff and his father, Mr. Norman Buck, went to view the boat. At that time, it was in the water, thus preventing any inspection of the boat's bottom. However, plaintiff inspected the remainder of the boat and was satisfied therewith. Both plaintiff and his father testified that the defendants guaranteed that the boat's bottom was in good condition and, if not, plaintiff's money *897 would be refunded upon return of the boat. Thereupon, plaintiff purchased the boat.
Thereafter, plaintiff and Kenny Blicker navigated the boat to plaintiff's moorings. Both testified that the bilge pumps operated constantly during this voyage.
Within eight days thereafter, plaintiff had the boat dry-docked. He stated that the boat's bottom, upon first view, was a "disaster" from being worm eaten. Plaintiff then attempted to contact Mr. Adams but was unable to do so.[2] Thereafter, plaintiff again dry-docked the boat and contacted Dan McCloy, a marine surveyor, to inspect the boat.
Mr. McCloy performed a survey on the Papa White on October 1, 1980. He noticed severe evidence of worm infestation on numerous planks below the waterline and partial replacement of the bottom with oversized plankings. He opined that the worm infestation created two problems: (1) excessive leaking, and (2) weakening of the vessel's structure to include the keel. He explained that uneven planking beneath the waterline could cause the boat to catch on something and thereby result in planks splitting away. Based on his inspection, McCloy testified he would not have approved the boat for insurance purposes. Further, he felt that the boat's condition was the same on the date of purchase (August 28, 1980) as it was on October 1, 1980. Also, he opined that more than likely, the boat would not have been seaworthy to perform shrimping duties as of August 28, 1980.
In February, 1981, McCloy inspected the Papa White for a second time. At this inspection, he was accompanied by Ed McGarry, a marine surveyor, who had inspected the boat at defendants' request in March, 1980, several months before it was purchased by plaintiffs. McCloy took this opportunity to point out to McGarry the worm holes and defects in the keel.
Like McCloy, McGarry was accepted as an expert in marine surveying. However, unlike McCloy, half of whose work involves the inspection of wood-bottom boats, McGarry has inspected only six or seven wood-bottom boats in his career. He deals primarily with steel-bottom boats.
It was McGarry's opinion that the vessel was suitable for insurance purposes when he inspected it in March, 1980. He testified that, at that time, there was no evidence of worm infestation and no apparent problem with the boat's bottom. In contrast thereto, defendant-Mr. Adams testified he was preparing to cover some worm holes at the time of McGarry's appraisal. Mr. Adams stated that previously thereto, he had covered other worm holes with a silicone and cement mixture and had replaced several planks of the boat's bottom because of the worm infestation and to aid in strengthening the boat. McGarry testified he noticed one or two planks had been replaced but did not consider this dangerous. As to his later inspection with McCloy in February, 1981, McGarry noticed that the vessel's stern boards appeared to have a slight opening in them which was not present in March, 1980. He opined that the vessel could possibly have struck something but that he could not really tell. Contrarily, McCloy could not recall any evidence that the boat had struck a submerged object.
Defendants complain that the worm holes in the boat's bottom are not redhibitory in nature because: (1) defendant told the plaintiff about the condition at the time of sale; (2) worm holes are allegedly a commonplace occurrence in wood-bottom boats; and (3) the condition was discoverable upon simple inspection.
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice. L.S.A.-C.C. art. 2520. Not among redhibitory vices are apparent *898 defects, that is, such as the buyer might have discovered by simple inspection. L.S. A.-C.C. art. 2521. In addition, a redhibitory action cannot be instituted by the buyer on account of latent defects[3] which the seller has declared to him before or at the time of the sale. L.S.A.-C.C. art. 2522.

(1)
Here, Mr. Adams stated that in deposition, he had stated that the plaintiff was told of the worm holes in the boat's bottom. When questioned again about whether he had told plaintiff of the worm holes, Mr. Adams responded affirmatively.
However, the trial court held that the plaintiff was entitled to rescission of the sale not due to the worm infested boat's bottom, but "on account of the unseaworthiness of the vessel at the time of sale."
We agree that the boat's unseaworthiness is the defect. Albeit the worm holes are the cause thereof, the record reflects that it is possible to have a seaworthy vessel with worm holes. Defendants' mention of the worm holes to plaintiff is of little importance since the crucial disclosure is the seaworthiness of the vessel.

(2)
Defendants next contend that worm holes are a common occurrence in wood-bottom boats and, therefore, are not redhibitory in nature. This contention is without merit.
First, a defect is redhibitory in nature when it is such that renders the thing sold absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it had he known of the vice. L.S. A.-C.C. art. 2520. It has nothing to do with whether or not the defect commonly exists.
Second, the redhibitory vice existing herein is the unseaworthiness of the vessel, not the presence of the worm holes.

(3)
Defendants finally contend that the worm holes were an apparent defect because they were discoverable by simple inspection. More specifically, defendants argue that dry-docking the Papa White is encompassed in the "simple inspection" required in L.S.A.-C.C. art. 2521 when taking into account: "the knowledge and expertise of the parties, the desire of the purchaser to dry-dock the Papa White, the reason for the purchaser to dry-dock the Papa White, the idea expressed by the purchaser that there was no rush to buy the Papa White, and the knowledge of the parties that there was, in fact, worm infestation in the Papa White."
L.S.A.-C.C. art. 2521 provides that:
"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
The court, having affirmed the trial court's finding that the boat's redhibitory defect was its unseaworthiness and not its worm holes, need not consider whether the worm holes were apparent. We find the sole issue posed is whether "simple inspection" requires one to dry-dock a boat to check its seaworthiness. We think not.
Our courts have noted that "inspection" connotes more than a mere casual observation and envisages an examination of the article by the vendee with a view of ascertaining its soundness, though he is not required to examine inner or hidden parts of the object for the purpose of finding latent defects. Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963); see also Estopinal v. Bourshie, 420 So.2d 749 (La. App. 4th Cir.1982). Such examination should reveal what a reasonably prudent purchaser acting under similar circumstances would have discovered. Anselmo v. Chrysler Corporation, 414 So.2d 872 (La.App. 4th Cir.1982). Further, the scope of the purchaser's inspection may depend *899 on the facts in each case, such as knowledge and expertise of the purchaser, opportunity for inspection, and assurances made by the seller. Anselmo, supra.
Here, there is nothing in the record to indicate that plaintiff had any "special knowledge" or "expertise" about wood-bottom boats. Further, although there is some question of whether, in fact, plaintiff knew about the boat's worm infestation, there is no doubt that plaintiff did not know the extent thereof. The record also reveals that the dry-docking facilities in the area were operating at capacity at that time and, therefore, there would have been a waiting period prior to the dry-docking of the boat. Although plaintiff was concerned about the condition of the boat's bottom, he relied upon Mr. Adams' guarantee of its good condition when deciding to forego the dry-docking before purchase. There was also testimony that the boat could be returned after dry-docking if the bottom was unsatisfactory. Mr. Adams' advertisement that the boat was in "ex. cond." supports plaintiff's reliance of Mr. Adams' guarantee. When plaintiff went to view the boat, it was in the water and all the worm holes were below the waterline. We find that nothing in defendant's advertisement or in plaintiff's viewing of the boat which would have put him on notice of the vessel's unseaworthiness.
As dry-docking a boat is both expensive and time consuming, and nothing indicated the boat's bottom was damaged, to require dry-docking before purchase would seem to go beyond that contemplated by "simple inspection." We so find.
For the above and foregoing reasons, the trial court's judgment is affirmed. Defendants are to pay all costs of the appeal.
AFFIRMED.
NOTES
[1] Defendants' ad read:

"47' Double or Single rig Shrimp Trawler. Fully equipped, all radios, and generators, Exc. Cond. Best buy in the South. See to appreciate. Leesville, La. Price negotiable. Call X-XXX-XXXX."
[2] Plaintiff testified that he spoke with Mrs. Adams on several occasions but was unable to speak with Mr. Adams. Further, plaintiff was contacted by the Adams' attorney, Mr. Carollo, and told not to call anymore.
[3] A latent defect is one which cannot be discovered by simple inspection. Lemoine v. Hebert, 395 So.2d 353 (La.App. 1st Cir.1980).