550 So.2d 737 (1989)
Billy Lyle ST. CLAIRE and Polly Ann Barclay St. Claire, Plaintiffs-Appellees,
v.
Carl A. LEWIS and Virginia Winklepeck Lewis, Defendants-Appellants.
No. 20746-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
*738 Neil Martin Trichel and Barry G. Feazel, Shreveport, for defendants-appellants.
Robert W. Raley, Bossier City, for plaintiffs-appellees.
Before HALL, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
This is a redhibition suit in which defendants, Carl and Virginia Lewis, appeal a judgment rescinding the sale of a residence and ordering repayment of the $65,000 purchase price, in addition to awarding $15,000 in general damages to plaintiffs, Billy and Polly St. Claire. The judgment also granted expert witness fees, attorney's fees and reimbursement of any interest on the mortgage loan affecting the property paid after the date of the judgment.
Defendants allege that the trial court erred in ordering rescission of the sale, awarding plaintiffs general damages, and failing to give defendants the opportunity to repair the vices present in the property. However, for the reasons expressed below, we affirm the judgment rendered.

FACTS
In April 1983, the St. Claires purchased a house located in Benton, Louisiana from the Lewises. Having looked at many houses before finding this one, they were particularly impressed by its layout and square footage. Prior to the purchase, the St. Claires visited the premises on several occasions. Mrs. St. Claire testified she not only looked for problems, but also was considering what she would do with the house to reflect her taste. She recalled that on her second visit, she asked Mr. Lewis if there were any problems with the home concerning its structure, plumbing, or otherwise, and that he replied he had never had any problems whatsoever, the home being one of the better ones on the street. She remarked that there were not even any cracks in the gypsum board, which was very unusual, and he replied that the house was in "tip-top shape."
Several months after moving from a house trailer into their newly acquired house, the St. Claires noticed the walls starting to discolor in several places. Later, when insects began coming into their daughter's bedroom, a large crack was discovered in a wall behind a chest-of-drawers in that room. The brick on the outside of the house began cracking and falling from the wall. The St. Claires also discovered a large crack underneath the carpet in the children's bathroom. Mrs. St. Claire testified they had noticed an odor in that bathroom and decided to take the carpet up, whereupon they found sewage oozing from the crack in the floor. Furthermore, when the St. Claires removed a large clock which the Lewises had left in the den over the fireplace, they discovered a large crack which had long arms on it "like a sun." As time went on, the chimney began moving away from the house. There were places where one could actually see all the way through from the inside of the house to the outside. Additionally, numerous cracks began to appear in the walls.
Mrs. St. Claire testified to the great let-down, the anger, and the embarassment experienced as a result of these developments. She felt so defeated that despite her original expectations of what she would do with the house, she did not even attempt to hang pictures and other decorative items she owned. She was embarassed to have friends over. There were times she cried and times she argued with her husband as a result of their frustration over the house. There were times her daughter slept with her because the child was frightened by the insects coming through the wall into her room.
Civil engineer Gary Strong testified concerning the extensive structural problems existing in the house. Movement of the foundation had, in his opinion, caused two major cracks so that the foundation was broken approximately into quarters.
*739 Mr. Lewis admitted at trial that he had previously had trouble with the house's foundation, and had the soil "stabilized." Cracks in the walls inside the house had been repaired and painted over, and cracks in the brick outside had been filled in with a rubberized caulk and the bricks painted over. While Mr. Lewis said he recalled informing plaintiffs he had soil stabilization work done, the testimony of plaintiffs was to the contrary. Mr. Lewis also testified he informed plaintiffs of problems with the cracking and moving of the chimney, but this also was denied by the plaintiffs and uncorroborated by the defendants' other witnesses.
After hearing the evidence, the trial court found the Lewises knew of the defects in the premises, concealed those defects either purposely or otherwise, and did not give adequate notice to the St. Claires of the defects. The trial court further concluded that the existing defects were not apparent at the time the St. Claires purchased the home because of the cover-up, the St. Claires would not have purchased the property had they known of the defects, and a diminution in price would not compensate them for their loss. The court also found no liability by the third party defendants who had done the soil stabilization work, and the appeal does not challenge that conclusion.

ISSUES
Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice. LSA-C.C. Art. 2520. Apparent defects, such as the buyer might have discovered by simple inspection, are not redhibitory vices. LSA-C.C. Art. 2521. Of course, the buyer who institutes a redhibitory action must prove that the vice existed before the sale was made to him. LSA-C.C. Art. 2530.
The existence of a redhibitory defect is a question of fact which cannot be disturbed unless the record as a whole establishes that the finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979); Fogal v. Boudreaux, 497 So.2d 366 (La.App. 3rd Cir.1986).
Considering the record in this case, we find no error in the trial court's conclusion that redhibitory defects existed in the property at issue. Further, there is no question that the defects existed before the sale to the Lewises. Nor were the defects apparent. A trained appraiser who examined the house prior to the sale noticed no flaws, and the trial court correctly concluded that the St. Claires should not be held to notice what a trained observer could not. Finally, given the numerous problems with the house which the St. Claires have endured, there can be little doubt, as Mrs. St. Claire testified, that they would not have purchased the house had they known of the problems. Certainly the expert testimony, that foundations problems usually eventually recur despite expensive repairs, would strongly weigh against such a purchase.
The Lewises also argue the $15,000 award for mental anguish, inconvenience and aggravation was in error for two reasons: (1) the Lewises were, under LSA-C.C. Art. 2531, "seller(s) who knew not the vices of the thing" and cannot be obligated to pay general damages; and (2) the amount awarded was excessive.
We agree with the trial court's conclusion that the Lewises knew of the nonapparent defects in the premises, but failed to adequately notify the St. Claires. Thus, the defendants' actions are governed by the provisions of LSA-C.C. Art. 2545 which state that the seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of expenses, including reasonable attorney's fees, is answerable to the buyer in damages. Under proper circumstances, those damages can include nonpecuniary damages for mental anguish, aggravation, and inconvenience. See Hostetler v. W. Gray & Co., Inc., 523 So.2d *740 1359 (La.App. 2d Cir.1988), writ denied, 531 So.2d 470, 471 (La.1988); Gitschlag v. U.S. Home Corporation, 506 So.2d 1236 (La. App. 1st Cir.1987), writ denied, 512 So.2d 1175 (La.1987).[1] Given the facts presented herein, we concur that the Lewises were answerable to the St. Claires for the general damages awarded.
An award of general damages will not be modified on appeal unless it is first determined that the trial judge abused his great discretion. LSA-C.C. Art. 2324.1; Reck v. Stevens, 373 So.2d 498 (La. 1979); Hardin v. Munchies Food Store, 521 So.2d 1200 (La.App. 2d Cir.1988).
Considering the inconvenience and aggravation experienced by the plaintiffs, who were still living in the defect-ridden house at the time of the trial in late 1987, and considering Mrs. St. Claire's testimony concerning the anger, frustration, and embarrassment experienced by plaintiffs as a result of the defects, we decline to change the trial judge's $15,000 damage award. While the award concededly is generous, it is not an abuse of the trial judge's great discretion. Compare Gitschlag, supra.
Defendants' final assignment of error is that the court should have given defendants an opportunity to repair, remedy or correct the vices, pursuant to the provisions of LSA-C.C. Art. 2531, before ordering rescission of the sale and the payment of damages. That article provides, in pertinent part, that a seller who does not know of the vices of the thing is not obliged to return the purchase price unless he fails to correct the vices. Thus, a good-faith seller ordinarily is entitled to an opportunity to correct the vices. However, LSA-C.C. Art. 2545, which deals with the seller who has concealed vices from the buyer, contains no such language. Because this case is governed by Art. 2545 rather than Art. 2531, the plaintiffs were under no obligation to allow the defendants an opportunity to repair, remedy or correct the vices present in the property. See Licausi v. Tullis Towne Homes of Tall Timbers, Inc., 452 So.2d 792 (La.App. 4th Cir. 1984). Furthermore, Mr. Lewis testified at trial that he was not willing to make any further repairs.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is not manifestly erroneous, and is now affirmed. All costs of this appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] The effect of former LSA-C.C. Art. 1934, concerning recovery of nonpecuniary damages, has not been briefed or argued in this appeal.