GUIDRY, Judge.
Dallas and Eula Beddingfield DeSoto, defendants in a redhibition suit brought by Brenda Cook for defects in her home, appeal that portion of the trial court’s judgment denying their third party demands filed against various parties. Third party defendant, Harmony Hills Development Company, Inc., appeals that portion of the trial court judgment denying its third party demand against Meyer, Meyer, Hixson and LaCroix, Inc. (corporately and individually) in the event Harmony Hills is cast in judgment as a result of the DeSoto appeal.
FACTS
In 1979, defendants, Dallas and Eula De-Soto (hereafter DeSoto) purchased lot 60 of the Harmony Hills Subdivision. DeSoto, a contractor, built a “spec” house on this property which was ultimately sold, in the fall of 1980, to plaintiff, Brenda A. Cook. At the time of the sale, no defects in construction were apparent. In August or September of 1983, Mrs. Cook began experiencing structural problems: cracks in the slab, outside walk and sheetrock; sticking doors and windows; and, separation of window and door frames from the walls.
Amicable demand was made on DeSoto to remedy the defects. When DeSoto refused, this suit followed.
The learned trial judge, in his written reasons for judgment, set forth the procedural posture of this suit at time of trial.
“This suit was initiated by the plaintiff, Brenda A. Cook (Cook) in redhibition against Dallas & Eula DeSoto (DeSoto), as the builder, for defects in her home. She does not seek recision of the sale, but rather, reduction of the purchase price and damages. DeSoto in turn, filed third party demands against Harmony Hills Development Co., Inc., (Harmony *71 Hills), as the developer of the subdivision and as his vendor of the lot on which he built the home; against T.J. Spier and Albert R. Waites as sole stockholders of Harmony Hills; against Meyer, Meyer, Hixson & LaCroix, Inc. (Meyer, Inc.), the engineering firm used by the developer; against Meyer, Meyer, LaCroix & Hix-son, (Meyer Group), a commercial partnership and its individual partners, as sellers of the property to the developer; against the Rapides Parish Police Jury (Police Jury) and the Rapides Area Planning Commission (RAPC) as political bodies responsible for approval of the subdivision in which the home is located.
Third party defendant, Harmony Hills, filed third party demands against Meyer, Inc., as engineers of the subdivision; against the partnership and individual partners in Meyer Group, as its vendor of the property; and against the Police Jury and the RAPC, as political bodies responsible for approval of the subdivision. The last action ..., a third party demand by the Meyer Group against T.J. Spier as seller of the property to the Meyer Group [was severed from the suit, pending the outcome of the main demand].”
Following trial, the case was taken under advisement. Written reasons for judgment were handed down on February 5, 1988, and judgment in favor of Brenda Cook and against DeSoto awarded plaintiff $10,-450.00 for underpinning, $3,277.00 for additional repairs, $389.08 for landscaping, $1,000.00 for inconvenience and mental anguish, and $7,500.00 for attorney’s fees. The trial court also rendered judgment in favor of all third party defendants and against all third party plaintiffs dismissing the latters’ demands.
On appeal DeSoto argues that one or more of the named third party defendants breached a duty to warn of the unsuitable soil conditions and/or is liable under the theory of breach of warranty since lot 60 was not suitable for the purpose for which it was purchased, i.e., the building of a single family dwelling. Additionally, appellants argue that Harmony Hills should be liable as manufacturers of the subdivision lots.
Appellants’ breach of duty and warranty arguments hinge on the nature of the soil in the Harmony Hills subdivision, i.e., is the soil in the 40 acre tract comprising Harmony Hills so uncharacteristic of other soils in the area so as to impose a duty to warn a purchaser of its unstable nature and/or is the soil so unfit for residential construction that its very sale breaches the implied warranty of fitness for its intended use.
The trial judge rejected DeSoto’s arguments giving a detailed explanation for his rejection in his reasons for judgment. We agree with the trial judge and quote approvingly from his reasons:
“The general soil types and the properties of the soils found in Harmony Hills Subdivision are set forth in two exhibits. Exhibit Waites # 1 is an “Inventory and Evaluation for Harmony Hills”. Mr. Max Johnson, a 32 year employee of the Soil Conservation Service of the U.S. Department of Agriculture, served as a member of the STAR Committee, (which is a preliminary review committee for RAPC), when the application for Harmony Hills Subdivision was presented to that committee. It was Mr. Johnson’s policy to gratuitously prepare a soil inventory for every proposed subdivision in the parish. These inventories were prepared from information available in Mr. Johnson’s office. It was sent to each member of the STAR Committee and to the developer. The report was not based on any actual testing or observations made on the site of the proposed development, but rather was prepared from materials and information on hand in the SCS office....
Exhibit DeSoto # 17 is the second exhibit showing general soil properties in the area. It covers all of Rapides parish and is entitled “Soil Survey of Rapides parish, Louisiana”. Although it was not published and available to the public until 1980, it is a compilation of information available in the SCS office during the 1970’s....
*72 A further review of the information contained in the soil survey of Rapides parish, Louisiana shows that except for the rich alluvial lands bordering the Red River and the major bayous in Rapides Parish, just about any 40 acre tract will include soils described as having severe limitations for dwellings. Even in the river and bayou alluvia lands there is an abundance of Moreland and Latania soils which are described as possessing severe limitations for dwellings. Furthermore, all of the engineers, geophysicists, soil scientists, etc. agreed that the properties of the soil were not apparent. They could only be discovered by testing and through the interpretation of those tests by a soil expert. Such interpretation was not within the expertise of a civil engineer unless further qualified by training and experience in soil analysis. They also agreed that the existence of a soil with building limitations in a development does not make the subdivision or the soil unsuitable for building purposes. A soil described as having ‘severe limitations’ in the SCS analysis could cause problems in one area where found, and not in others. Only a soil test at a specific site can reveal the properties of a given soil at that site. The obvious conclusion from all of the above is that the ‘inventory and evaluation’ of soil types for Harmony Hills Subdivision did not present anything unusual or out of the ordinary for a subdivision in Rapides Parish.
... [F]or the reasons noted herein-above, the court does not feel that the existence of Acadia Soil in the area raises any red flags or duties to warn of its existence. It is not unusual, but rather typical of the area. In fact, it would be highly unusual if this soil were not present in any 40 acre tract located in the 82,500 acre area in northeast Rapides Parish, Louisiana, delineated on the General Soil Map as being predominately Acadia-Kolin soils. The location of this soil does not mean the property is unsuitable for dwellings with a slab on grade concrete foundation. Conceivably all of the subdivisions and home sites in the area, to some degree or another, contain Acadia or other types of soils with building limitations. The reports submitted by SCS are very general in nature. All of the engineers agreed that specific on-site testing was necessary not only to determine the actual type of soil located on a particular lot but also the properties of that soil on that lot. Mr. Gorsha, a geotechnical engineer who specializes in soil analysis, was of the opinion that soil tests should be made within the perimeter of a proposed slab or foundation, as different results could be obtained at different locations within a single residential lot.”
Inasmuch as the evidence clearly establishes that the soil in the Harmony Hills Subdivision was typical of the soil in that area of Rapides Parish and since the defendants failed to prove that the soil in the subdivision was unsuitable for residential construction, we find the trial judge committed no clear error in denying DeSoto’s third party claims based on breach of duty and/or warranty. The composition of the soil in Harmony Hills possessed no unusual characteristics which would give rise to a duty to warn.
In finding DeSoto liable to plaintiff for her damages, the trial judge stated:
“Our courts have long held the builder of a home who builds according to his own plans and specifications to be ‘a manufacturer’ of that home for purposes of redhi-bition, and he is presumed to have knowledge of any defects therein. Cox v. Moore, 367 So2d 424 (La.App. 2d Cir.1979) [writ denied, 369 So2d 1364 (La.1979) ]; Schamens v. Crow, 326 So2d 621 (La.App. 2d Cir.1975). As such, the builder stands in the shoes of the seller who knows of the vice in the thing he sells and omits to declare it. La.C.C.P. Art. 2545.”
Appellants, citing Amin v. Head, 419 So2d 529 (La.App. 2d Cir.1982), argue that Harmony Hills as developer should be held to be a manufacturer and thus liable to third party plaintiffs for selling a lot manufactured of defective soil. This argument fails for two reasons.
*73 First, as the learned trial judge observed in his reasons for judgment:
“... there is no evidence in this case that the soil was defective. On the contrary, all of the experts, soil scientists and other engineers, testified that the soil was not defective. It has certain properties which have to be taken into consideration in the construction of a slab on grade concrete foundation or in the construction of any type of foundation. These properties are not apparent and can only be discovered through soil tests and interpretation. Once these properties are known a slab or other foundation compatible with these properties, can be designed, constructed and relied on without problems. It is only where the slab is not compatible with the soil that problems arise. In the last analysis it is the responsibility of the builder who constructs the foundation to see that the slab is compatible with the properties of the soil.”
Second, appellants’ reliance on the Amin case is misplaced. Commenting on Amin, the trial judge stated:
“In that case, the developers were held to be liable where they ‘manufactured’ a low, lying lot which was crossed by a natural drain. The natural drain was altered by providing an alternative drainage system, building a retaining wall of concrete and installing additional underground drains and drain boxes to cure flooding which they knew existed. Furthermore, one of the developers actually constructed the house and the other developer lived in the house and subsequently sold it to the plaintiff without disclosing that the property had flooded while he resided there.”
In the instant case, Harmony Hills did nothing more than lay out streets and establish the boundaries of the lots within the subdivision. The activities of the defendants in Amin are totally dissimilar. Accordingly, we agree with the trial judge that Harmony Hills was not a “manufacturer” of the lots in the subdivision and is not liable to DeSoto.
In conclusion, all of the evidence points to DeSoto’s use of a Type I rather than the sturdier Type II slab as the cause of the defects in plaintiff’s home. If DeSoto had conducted soil tests prior to beginning construction, he would have known that the minimum slab required for lot 60 was a Type II slab. Absent extraordinary circumstances, which we do not find here, it is the responsibility of the vendor-builder to construct a foundation that is both adequate for the home which is being built and for the soil on which it is located. See Chastant v. SBS-Harolyn Park Venture, 510 So2d 1341 (La.App. 3rd Cir.1987).
Accordingly, for the reasons stated, the judgment appealed from is affirmed. Inasmuch as we affirm the trial court, we need not address the appeal of Harmony Hills Development Company, Inc. Costs of this appeal are assessed against defendants-third party plaintiffs-appellants, Dallas and Eula DeSoto.
AFFIRMED.