570 So.2d 145 (1990)
George Bell THOMSON, Jr., Steven Schull Thomson and Timothy H. Supple, Plaintiffs-Appellants,
v.
Bobby Gene COBB and Jean Derveloy Cobb, Defendants-Appellees,
Wayne Hebert and Bonnie Vincent Hebert, Third Party Defendants.
No. 89-480.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Rehearing Denied December 14, 1990.
Writ Denied January 4, 1991.
*146 Mouton & Alexander, John A. Mouton, III, Lafayette, for plaintiffs-appellants.
Bean & Parker, Ernest L. Parker, Lafayette and Theall & Fontana, Anthony J. Fontana, Jr., Abbeville, for defendants-appellees.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
DOMENGEAUX, Chief Judge.
In this redhibition suit, the plaintiffs seek to rescind the sale of immovable property, contending an improperly placed sewer line prohibits them from developing the property as intended. The trial judge dismissed *147 the suit, after finding the location of the sewer line was discoverable upon simple inspection. We reverse.

FACTS
Bobby and Jean Cobb and their business partners, Wayne and Bonnie Hebert, developed Country Lane Townhouses in Lafayette as a multi-family residential subdivision. In March of 1982, Bobby Cobb approached his friend George Thomson about purchasing Lot 13, the one remaining unimproved parcel in the subdivision. Thomson, a real estate agent familiar with the subdivision, considered the lot a good investment. He convinced his brother, Steven Schull Thomson, and his friend, Timothy Supple, to purchase the property with him, with the intention of one day placing a fourplex on it, in conformity with the other lots in the subdivision. On April 22, 1982, the three plaintiffs purchased Lot 13 from the Cobbs for $18,000.00.
Prior to the sale, Bobby Cobb provided Thomson with a plat of Lot 13 prepared by surveyor Gerald Reaux and which was filed in the public records. Lot 13, the smallest in the subdivision, fronts 87.56' on Country Lane Road and is 115' deep. Directly behind the lot is the private sewerage treatment plant which services the subdivision.
The plat prepared by Reaux identified a 5' utility easement along the frontage of Lot 13 and a 20' drainage easement running the depth of the property at its southwest boundary. The plat also showed another 5' utility easement and a 10' access easement, both located within the drainage easement.
After the sale, Thomson did not visit the property again until 1987, when he observed tire tracks along the center of the lot leading to the sewerage treatment plant. Believing plant employees were trespassing on his property, Thomson hired a surveyor, Greg Spikes, to prepare a second plat of the lot. The Spikes plat revealed the underground sewer line which services all residences in the subdivision was not located within the 5' utility easement along the lot's southwest boundary, but in fact traversed Lot 13 approximately at its center.
Thomson then hired Ludrine Leger, a plumbing contractor, to inspect the sewer lines. Leger noted the only external evidence of the sewer's location was a manhole cover located within the 5' utility easement along the lot's frontage. According to Leger, the sewer line runs in an east-west direction within the easement until it reaches the manhole. At that point, the line makes a 90 turn northward and proceeds to the treatment plant behind the lot.
The sewer line is composed of PVC, SDR 35 push-on joint pipe, a thin-walled pipe designed for outside use. Mr. Joseph Matte, a plumbing inspector for the Acadiana Metropolitan Authority, explained the Metro Code prohibits the construction of a building over this type of pipe. He further explained that sewer pipes servicing a large number of residences are generally not laid under buildings.
Thomson attempted to resolve the matter with the Cobbs, but when negotiations broke down, the three plaintiffs filed this suit. The Cobbs third-partied the Heberts, but on the day of trial, the Cobbs and the Heberts entered a stipulation whereby they agreed to share equal responsibility for any recovery in favor of the plaintiffs.

PRESCRIPTION
The Cobbs filed an exception of prescription which the trial court apparently deferred until after trial on the merits. In taking the matter under advisement, the district judge indicated prescription was one question he would consider; however, he did not address that issue in his written reasons for judgment. We must presume the exception was denied.
A redhibitory action must be brought within one year of the date of the sale, unless the seller had knowledge of the defect and neglected to declare it to the purchaser. La.C.C. art. 2534. If the seller fails to inform the purchaser of a known, latent defect, the purchaser has one year from the date he discovers the vice to institute his suit in redhibition. La.C.C. art. *148 2546. A manufacturer is presumed to know the defects in the things made by him and is therefore considered a bad faith seller. Rey v. Cuccia, 298 So.2d 840 (La. 1974).
The plaintiffs contend the Cobbs, as the developers of Country Lane Townhouses, must be considered manufacturers for purposes of this suit. We agree, finding the facts of this case fit squarely within the rulings of Amin v. Head, 419 So.2d 529 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1151 (La.1982), and Hostetler v. W. Gray & Company, Inc., 523 So.2d 1359 (La.App. 2d Cir.1988), writs denied, 531 So.2d 470, 471 (La.1988).
In Amin, the subdivider who installed a defective underground drainage system was considered a manufacturer for redhibition purposes, as was the developer in Hostetler, who provided the purchasers with a plat which incorrectly identified a flowage easement.
As the developers of Country Lane Townhouses, the Cobbs were responsible for the installation of its sewerage system. Bobby Cobb provided the plaintiffs with a plat of Lot 13 which purportedly identified the easements where that system should have been located. Under Amin and Hostetler, we find the Cobbs are properly charged with the constructive knowledge of the sewer line's incorrect location.
This case does not extend Amin so that every developer is to be considered a manufacturer in redhibition suits. As we recognized in Cook v. DeSoto, 552 So.2d 69 (La. App. 3d Cir.1989), writ denied, 556 So.2d 1264 (La.1990), that determination is a factual one, dependent upon the activities of the developer in each case.
As manufacturers, the Cobbs are subject to the extended prescriptive period of article 2546 and are liable for additional damages and attorney's fees under La.C.C. art. 2545. Because the plaintiffs filed suit within a year of their discovery of the sewer line's actual location, their claim has not prescribed.

APPARENT OR LATENT DEFECT?
Apparent defects, or those discoverable by simple inspection, are not considered redhibitory vices. La.C.C. art. 2521.
The term "simple inspection" as used in this code article connotes more than a mere casual observation by the buyer; it requires an examination of the article with a view of ascertaining its soundness. Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963). However, the buyer is not required to examine the inner or hidden parts of the object for the purpose of finding latent defects. Pursell; Estopinal v. Bourshie, 420 So.2d 749 (La.App. 4th Cir.1982). The scope of the buyer's inspection may depend on the facts in each case, such as knowledge and expertise of the buyer, opportunity for inspection, and assurances made by the seller. Buck v. Adams, 446 So.2d 895 (La.App. 1st Cir.1984).
The trial judge concluded the location of the sewer line was an apparent defect. He reasoned that a buyer with Thomson's real estate experience should have been alerted to a problem with the sewer line upon observation of the manhole cover and the sewerage treatment plant directly behind the lot.
Whether a defect is latent or apparent is a factual determination which will not be disturbed by an appellate court unless manifestly erroneous. Voorhies v. Livingston, 420 So.2d 1206 (La.App. 3d Cir. 1982). Applying this deferential standard of review, we nonetheless conclude the trial court was clearly wrong in finding an apparent defect in this case.
The only external evidence of the sewer's location was a manhole cover located within the 5' utility easement along the lot's frontage. Although the manhole marked the point at which the sewer line left the easement, from the lot's surface, the manhole cover itself gave no indication that the underground pipes made an abrupt turn in direction. Cobb provided Thomson with a plat identifying the easements created on Lot 13, and the only visible sign of the sewer's locationthe manhole coverwas found within those easements. The most *149 reasonable inference from these facts is that the sewer line continued within the easements along the frontage and southwest boundary of Lot 13. Viewing the manhole cover alone would not have put Thomson on notice that the sewer's actual location varied from the representations made by his vendor.
Nor do we find that Thomson's real estate experience required him to conduct a detailed inspection of the lot. Thomson was a real estate broker, not a plumber. Ludrine Leger, the plumbing contractor, testified he had to remove a manhole cover and crawl into the manhole before he could determine the direction of the line. Thus, even to the trained eye, the sewer's location was not readily apparent. Clearly, the discovery of the redhibitory vice in this case required the inspection of the lot's "hidden parts," which is beyond the scope of the "simple inspection" contemplated by article 2521.
Having found the plaintiffs have met their burden of proving a latent defect existing at the time of the sale, we now turn to the issue of damages.

REMEDIES
As manufacturers presumed to know the defects in the thing sold, the Cobbs are liable for restitution of the purchase price, repayment of expenses, including reasonable attorney's fees, and damages. La.C.C. art. 2545. Rescission is an appropriate remedy when the defect in a thing sold renders it useless and altogether unsuited for its purpose. La.C.C. art. 2541.
The only purpose for which the plaintiffs bought Lot 13 was to develop it as a four-plex. To proceed with this plan, plaintiffs are now forced either to relocate the sewer line or to replace the PVC, SDR 35 pipe with a heavier grade pipe. Estimates of replacing the existing sewer line with a thick-walled pipe ranged from $6,000.00 to $15,000.00. However, plaintiffs' expert, Joseph Matte, testified that sewer lines serving this number of residences are generally not located under buildings. In addition to the sewer problem, the record also revealed the access easement on this lot is impassable, being located wholly within a drainage ditch. The record on the whole indicates the erection of any building on this lot may be impractical. Given the high costs of relocating the sewer line in relation to the purchase price, and the added problem with the access easement, we find rescission is plaintiffs' appropriate remedy.
In addition to the purchase price of $18,000.00, plaintiffs are entitled to reasonable expenses occasioned by the sale as well as those incurred for the preservation of the property. Abdelbaki v. University Presbyterian Church, 380 So.2d 35 (La.1980). Expenses occasioned by the sale include closing costs, appraisal costs, interest, taxes and insurance. Abdelbaki, supra.
Of the expenses requested by the plaintiffs, we find the following are supported in the record:

Closing costs $500.00
Property taxes 411.67
Surveying expenses 280.00

Plaintiffs also seek the return of interest paid in the amount of $14,815.00. Although interest is a recoverable expense, we find the plaintiffs failed to prove the amount of interest expense in the trial court.
Plaintiffs attempted to introduce the "loan jacket" for the Lot 13 note, which purportedly listed all payments on principal and interest. The trial judge refused to admit it, sustaining defendants' objection that plaintiffs failed to connect that document with the note for Lot 13. Plaintiffs did not proffer the loan jacket or assign as error the trial court's failure to admit it.
George Thomson and Steven Thomson testified they verified with the president of St. Mary Bank and Trust that the amount of interest paid by all three plaintiffs was $14,815.00; however, this testimony is hearsay. With no other supporting documentation in the record, such as cancelled checks, we must conclude the plaintiffs have failed to prove this expense.
Under article 2545, plaintiffs are also entitled to reasonable attorney's fees. Plaintiffs' request for $5,000.00 for trial work is supported by the invoices introduced *150 into the record. They also seek an additional amount for prosecution of this appeal, which we fix at $1,000.00.
To recap, plaintiffs' recovery is itemized as follows:

Purchase price $18,000.00
Closing costs 500.00
Property taxes 411.67
Surveying expenses 280.00
Attorney's fees 6,000.00
 __________
Total: $25,191.67

Because of the stipulation entered by the defendants and the third party defendants, we need not decide the merits of the third party demand. Recognizing the stipulation in the trial court, we will render judgment in favor of plaintiffs for this amount, in solido against the defendants and the third party defendants.

COSTS
Plaintiffs also ask this court to fix the expert witness fees for their three experts who testified at trial. Because plaintiffs' suit was dismissed on the merits, no fees were set by the trial judge.
La.R.S. 13:3666(A) authorizes additional compensation for experts with reference to "the value of time employed and the degree of learning or skill required." Apparently, some debate exists as to whether or not an appellate court can set expert fees pursuant to this statute. See Riche v. City of Baton Rouge, 541 So.2d 905 (La.App. 1st Cir.1988). However, as in Riche, the record before us contains sufficient information for us to make this determination.
Ludrine Leger, a plumbing contractor, J.C. Matte, an inspector for the Acadiana Metropolitan Authority, and Dominic Naomi, a civil engineer, were accepted by the trial court as experts in their respective fields. The trial of this matter lasted less than one day. Leger and Matte testified for relatively brief periods of time, being only two of several witnesses called by the plaintiffs. Although Mr. Naomi was called to the stand, a stipulation was reached regarding his testimony, and he was immediately excused. We find the record supports fees of $250.00 for Mr. Leger, $250.00 for Mr. Matte and $200.00 for Mr. Naomi.

DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of plaintiffs, George Bell Thomson, Jr., Steven Schull Thomson and Timothy H. Supple, and against defendants, Bobby Gene Cobb and Jean Derveloy Cobb, ordering rescission of the sale of Lot 13 of Country Lane Townhouses Subdivision. Judgment is further rendered in favor of plaintiffs for $25,191.67, in solido against Bobby Gene Cobb, Jean Derveloy Cobb, Wayne Hebert and Bonnie Vincent Hebert.
Cost of trial, including expert witness fees set above, and of this appeal are assessed equally against defendants and third party defendants.
REVERSED AND RENDERED.
ON APPLICATION FOR REHEARING BY GEORGE BELL THOMSON, STEVEN SCHULL THOMSON AND TIMOTHY H. SUPPLE
PER CURIAM.
Applicants call the court's attention to the fact that the decision rendered herein was silent as to the assessment of legal interest, but suggest for the first time in their application that interest is due from date of tender rather than date of judicial demand.
Applicants are entitled to legal interest from date of judicial demand on the amount of $19,191.67, and legal interest on the amount of $6,000.00, being attorney's fees, from date of judgment, and we amend our judgment to so provide.
In all other respects, the application for rehearing is denied.