647 So.2d 488 (1994)
Jeffrey D. FRUGÉ, et ux., Plaintiffs-Appellants,
v.
Michael HANCOCK, et ux., Defendants-Appellees.
No. 94-730.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Writ Denied March 10, 1995.
*489 Willard Trichel Armitage Jr., Alexandria, for Jeffrey D. Fruge, et ux.
Steven Bryan McAlister, Alexandria, for Michael Hancock, et ux.
Before YELVERTON, THIBODEAUX and PETERS, JJ.
PETERS, Judge.
This is a redhibition suit in which the plaintiffs, Jeffrey and Lisa Fruge', seek to rescind the sale of immovable property and to recover expenses, damages, and attorney fees from their vendors, Michael and Patricia Hancock. The trial court rendered judgment in favor of the defendants, and the plaintiffs have appealed.

DISCUSSION OF TRIAL RECORD
On June 14, 1991, Jeffrey and Lisa Fruge' purchased a house and lot located on Shannon Street in Rapides Parish, Louisiana, from Michael and Patricia Hancock. The plaintiffs claim that in the beginning of 1992, Mrs. Fruge' began noticing hairline cracks in the walls. In the succeeding months the plaintiffs contend that additional problems became apparent including uneven settlement throughout the house; wallpaper rippling in corners; molding separating from walls and ceilings; wide cracks appearing under the wallpaper; wallpaper and ceilings cracking; doors sticking or not closing properly; cracks coming up from the facing of the doors; floors splitting; the driveway and front walk cracking; windows cracking and separating; and the front porch separating from the roof and main portion of the house. In October of 1992, the plaintiffs retained the services of Philip W. Beard, a consulting civil and structural engineer, who was of the opinion that there was excessive settlement in the foundation of the house and that the settlement had been present for quite some time. Based on this report the plaintiffs brought this action in redhibition.
The home involved in this litigation is an older structure. The plaintiffs' expert estimated that the house had been constructed at least twenty years ago and possibly over thirty-five years ago. It was purchased as a residence by the defendants in 1979.
The defendants resided in the home after its purchase and were aware of the existence *490 of cracks due to shifts in the foundation. In fact, in 1988, Mrs. Hancock retained Philip W. Beard to perform an examination to determine if she had a "cracked slab." She testified that in the early 1980's, the city, while performing sewer construction work at an adjacent residence, had engaged in some type of drilling activity that caused her house to shake. She had remained concerned about the foundation thereafter but did nothing about her fears until after she received an inheritance in 1988. She decided to invest her inheritance in renovations to her home but did not wish to do so if she had a "cracked slab." In a letter dated November 17, 1988, Mr. Beard advised Mrs. Hancock that the "best way to rehabilitate the foundation is to underpin the entire perimeter" at an approximate cost of $12,000.00 to $15,000.00.
According to Mrs. Hancock, because nothing in the letter mentioned a "cracked slab," which was her principal concern, she did not consider Mr. Beard's recommendation necessary. She proceeded with her intended renovations which included wallpapering or painting the interior, replacing all doors with steel doors, installing new carpet and vinyl on the floors, replacing the sliding glass patio doors with steel french doors, installing a new countertop in the kitchen, patching the exterior brick veneer, and replacing the exterior wood trim with aluminum siding. According to Mr. Hancock, this activity was completed in 1989.
Mr. Hancock is a career employee of Ford Motor Credit Company. In early 1991 he was working in the Alexandria, Louisiana, office of his employer. In January of 1991, Mr. Hancock was informed that the Alexandria office would be closed and the employees transferred to Shreveport, Louisiana. It is this career move that gave rise to the property sale in dispute.
Initially, according to Mrs. Hancock, she and her husband did not intend to sell their home. However, she was contacted by a local real estate agent, Dene McBride, and after discussion with Ms. McBride, agreed to a "one-time" showing of the property to plaintiffs. After inspection of the house by Mrs. Fruge', acquisition of a certified FHA appraisal, and price negotiations, the Hancocks agreed to sell to the plaintiffs for $63,000.00. The sale was closed on June 14, 1991.
Philip Beard testified as an expert in structural, civil and forensic engineering. It was his opinion the house had undergone extensive settlement primarily caused by desiccation or drying out of the soil from tree roots. He testified that once a house settles beyond approximately one-half to three-quarters of an inch, recurrent cracking is a common problem. Mr. Beard estimated that settlement in this house was as high as two to three inches in some corners. He was aware the structure was an older house and was not exactly sure of its age, but he was of the opinion that, regardless of the age, the settlement had been occurring since the house had been constructed. Photographs of the house taken by Mr. Beard pursuant to his investigation for the plaintiffs revealed cracks in the exterior brick, a buckle in the sheetrock, cracks on the walls, separation of the molding from the ceiling, and other imperfections. However, Mr. Beard testified that he specifically recalled seeing an open crack in a ceramic border in the bathroom when he investigated the house in 1988.
Both Mr. and Mrs. Hancock indicated that the house had cracks prior to the sale. Mrs. Hancock testified that defects or flaws depicted in the photographs shown to her at trial and taken by Mr. Beard in 1992 existed at the time the house was sold to the plaintiffs. Specifically, she indicated that the following defects or flaws existed either at the time they purchased the house or at the time they sold the house to the Fruges: caulking shown in Plaintiffs' Exhibit 7-B; facia in a corner of the exterior of the house not perpendicular to the horizon as shown in Plaintiffs' Exhibit 7-J; a crack on the brick wall in the rear of the house as shown in Plaintiffs' Exhibit 7-K; cracks in the brick repaired with mortar on another portion of the brick wall as shown in Plaintiffs' Exhibits 7-L,M; separation of the walls in two places in the house as shown in Plaintiffs' Exhibits 7-P,Q; a crack above the door in one of the rooms as shown in Plaintiffs' Exhibits 7-S; molding separating from the ceiling as shown *491 in Plaintiffs' Exhibits 7-T,X; a gap between the door and door facing as shown in Plaintiffs' Exhibit 7-V; and a crack in the ceramic tile bordering a mirror in the bathroom and a crinkle (or crack) in the wallpaper above the mirror as shown in Plaintiffs' Exhibit 7-W. Mrs. Hancock also testified that the doors stuck before they sold the house to the plaintiffs.
Scott Hancock, the son of the defendants, testified that before the sale of the house there was a crack above the door and in the ceiling of the back bedroom; the door stuck in that bedroom as well as the middle bedroom; there was a crack in the tile in the bathroom; there was a crease in the wallpaper in the master bedroom; and there was a crack in the driveway and in the sidewalk leading to the front porch. His wife, Allison, was present the day Mrs. Fruge' inspected the house and on that day recalled seeing a hairline crack in the doorway inside the bedroom; a crease in the wallpaper in the guest bathroom over the mirror; and a crack in the driveway.
Cynthia Laffoon, a friend of Mrs. Hancock, testified that she had visited in the home on many occasions prior to the sale and had even spent the night on occasion. She recalled seeing a crack in the ceramic in the bathroom; a crack in the wall above the doorway in the middle bedroom; doors in the middle and back bedrooms and utility room which would not close properly; a fairly large crack that ran down the driveway; and cracks in the brick.
The defendants failed to inform the plaintiffs or Ms. McBride of Mr. Beard's letter and testified they had simply forgotten it. Mrs. Hancock claims to have informed Ms. McBride that the house contained cracks due to shifting of the foundation and Ms. McBride stated that "it looked fine." According to Mrs. Hancock, she walked Ms. McBride around the house and pointed out different things to her, such as the crack in the utility room and the repair work in the garage. However, Ms. McBride testified that when she inspected the house she did not notice any cracks in the wall, molding separated from the ceiling, doors sticking, or anything of that nature. She testified that she was never aware of a settlement problem and if such existed, it did not show.
Prior to the sale Mr. Hancock signed a "PROPERTY CONDITION DISCLOSURE FORM" which contained a negative response in the columns provided for disclosure of listed defects or conditions. Although he acknowledged his signature on the document, Mr. Hancock denied checking the columns for disclosure and did not recall discussing any items listed with the real estate agent. Among the categories listed in the columns for disclosure were foundations; wall and roof structure; flooring and subflooring; adverse surveys, reports, or inspections concerning the property; additions, repairs, and/or substandard workmanship on the property; and any other conditions, problems, or defects in or around the property of which the buyer should be aware.
Prior to the sale, Mrs. Fruge' inspected the house and on a second occasion was even able to view the structure after furniture and pictures had been removed. She testified at trial that she did not notice any cracks in the ceiling, separation of the molding or anything of that nature, nor were any such defects pointed out to her by the owners. Mr. Fruge' testified that he performed a basic inspection of the house the day before the closing and did not notice any of the problems that he subsequently noticed about the house.
In addition to Ms. McBride, a second real estate agent, Ellen McConnell, was involved in the transaction. Although they both worked for the same agency, Ms. McConnell was the plaintiffs' real estate agent. Mrs. Fruge' testified that neither Ms. McBride nor her own real estate agent, Ms. McConnell, ever told her that the house had settlement problems. Ms. McConnell testified that she saw nothing that would cause her to "flag" this piece of property.
The trial court rendered oral reasons for judgment finding that the defects were apparent or could have been discovered upon simple inspection and that the defendants made no conscious effort to hide them. The trial court specifically found that Mrs. Hancock informed her relator that a settlement *492 problem existed. It is from this ruling that the plaintiffs appeal.

OPINION
Louisiana Civil Code article 2521 provides that "[a]pparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices." As used in this article, "simple inspection" connotes more than a mere casual observation by the buyer. Thomson v. Cobb, 570 So.2d 145 (La.App. 3d Cir.1990), writ denied, 572 So.2d 72 (La. 1991). "Simple inspection" requires an examination of the article with a view of ascertaining its soundness, but the buyer is not required to examine the inner or hidden parts of the object for the purpose of finding latent defects. Thomson, supra. In cases of this kind, the proper test to be applied is whether a reasonably prudent buyer acting under similar circumstances would have discovered the differential settlement problem prior to the act of sale. Sievert v. Henderson, 506 So.2d 743 (La.App. 1st Cir. 1987).
Initially, we note that, assuming that the Hancocks did inform Ms. McBride of the settlement problem, knowledge of the settlement problem cannot be imputed to the plaintiffs simply because a real estate agent was aware of the problem. Mintz & Mintz Realty Company, Inc. v. Sturm, 419 So.2d 981 (La.App. 4th Cir.), writs denied, 423 So.2d 1163, 1164 (La.1982).
We now address whether the defects were apparent. The defendants, their son and daughter-in-law, and a friend of Mrs. Hancock testified that defects existed before the house was sold and were apparent. The defendants acknowledge making cosmetic changes in 1989 and 1991 but deny doing anything to hide any defects. According to the defendants, defects as evidenced by plaintiffs' exhibits were apparent before the sale.
The plaintiffs' expert specifically recalled that visible defects existed when he performed his first inspection in 1988. He also acknowledged that even if wallpaper had been added in 1989, more probably than not, cracking would have occurred within a year after the wallpaper was put up.
The plaintiffs assert that at least three experienced observers, i.e. both real estate agents and the appraiser, viewed the house and found no apparent defects. Citing St. Claire v. Lewis, 550 So.2d 737 (La.App. 2d Cir.1989) and Cory v. Carona, 527 So.2d 495 (La.App. 5th Cir.), writ denied, 532 So.2d 769 (La.1988), the plaintiffs contend that they should not be held to observe what the real estate agents and the appraiser did not observe. We find St. Claire distinguishable because, in that case, the court found that defects existed before the sale of the house but were either not apparent or concealed. We find Cory distinguishable because even the seller in that case, who had lived in the house for fourteen years, did not have knowledge of the defect.
In the instant case the trial court made a factual determination that the defects were apparent or could have been discovered on simple inspection and that the defendants made no conscious effort to hide them. Whether a defect is apparent or latent is a factual determination. Thomson, supra. We may not set aside a trial court's findings of fact in the absence of "manifest error" or unless the findings are "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court had a reasonable basis for concluding that the defects were apparent at the time the house was sold. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Rosell, supra. We find that the trial court's determinations in this regard are not clearly wrong.
The plaintiffs contend that even if the cracks in the walls, molding pulling away from the ceiling, and the doors sticking were visible, these conditions should not indicate a substantial structural defect. We disagree. The settlement problem was partially apparent through these conditions, and the plaintiffs had a duty to make further investigation. Since the settlement problem was partially apparent and the plaintiffs purchased the house without further investigation, we find that they have waived their right to sue *493 in redhibition for the settlement problem. See generally, Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963); Sievert, supra; and Fricano v. Bennick, 93-1040 (La.App. 5th Cir. 5/11/94); 638 So.2d 268, writ denied, 94-1517 (La.1994); 642 So.2d 1297.

DISPOSITION
For the foregoing reasons we affirm the trial court's judgment. We assess costs of this appeal to the plaintiffs.
AFFIRMED.